JOHN H. PEAL, PROSECUTOR, v. THE MAYOR AND COM-
MON COUNCIL OF THE CITY OF NEWARK ET AL.

Argued February 20, 1901—Decided February 25, 1901.

1. The superintendent of buildings, under the charter and ordinances of the city of Newark, is a city office and exists because of the power to create it under sections 21 and 31 of the city charter of 1857.

2. Such officer is one of the subordinate officers of the city authorized to be provided for, but not named, in section 21 of the city charter, and under said section his term of office can only continue until his office is declared vacant or until another person is appointed to succeed him.

3. An appointment to such office for the term of two years and an acceptance thereof by the appointee will not create a contract for such term. The case of *Hardy* v. *Orange*, 32 *Vroom* 620, is not applicable, but the principle of *Gear* v. *Hoboken*, 3 *Dutcher* 265, applies.

4. The act of April 28th, 1886, providing for the appointment of an inspector of buildings in cities and authorizing his appointment for two years and prohibiting his removal except for cause, has no relevancy to the incumbent of the office of superintendent of buildings created by the ordinances of the city of Newark under the power conferred by the city charter.

On *certiorari.*

Before Justices VAN SYCKEL and FORT.

For the prosecutor, *Joseph A. Beecher.*

For the defendants, *McCarter & Adams.*

The opinion of the court was delivered by

FORT, J. The prosecutor was appointed superintendent of buildings of the city of Newark on May 21st, 1897. The office was created by the revised ordinances of the city of Newark, passed September 20th, 1889. Section 131 of this revision provides for this office as follows:

"There shall be appointed an officer to be designated as the

superintendent of buildings of the city of Newark, * * * who shall receive for his services an annual salary of nine hundred dollars."

By an amendment to this ordinance, approved June 29th, 1896, the salary was increased to $1,500. This ordinance also provides for the appointment of an assistant to said superintendent of buildings.

The charter of the city of Newark authorizes the common council, by ordinance, "to regulate and control the manner of building dwelling-houses and other buildings, and to prohibit, within certain limits, to be from time to time prescribed by ordinance, the building or erection of any dwelling-house, store, stable or other building of wood or other combustible materials; to regulate the construction of chimneys, and to compel the sweeping thereof; to prevent the setting up or construction of furnaces, stoves, boilers, ovens or other things in such a manner as to be dangerous; to prohibit the deposit of ashes in unsafe places; to authorize any city officer or person or persons, whom they may designate for that purpose, to examine and inspect, by day, any place or places for the purpose of ascertaining whether the same is or are in a safe condition, and if not, to direct or cause the same to be made so." *Pamph. L.* 1857, *p.* 135, § 31. It was clearly under this authority that the ordinance of 1889 was adopted.

By section 21 of the city charter it is provided that the common council shall, from time to time, appoint, by a majority of the whole number of the members thereof, certain city officials (who are, in the section, specially named) "and such other subordinate officers not herein named as they shall think necessary for the better ordering and governing the said city and the carrying into effect the powers and duties conferred and imposed upon the said common council by this act."

The concluding part of the twenty-first section reads as follows:

"Every person who shall be appointed to any office under the provisions of this act shall be a resident and elector of the

said city, and shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office." *Pamph. L.* 1857, p. 128, § 21.

The ordinance creating the office of superintendent of buildings for the city of Newark expressly says that there shall be appointed by the city of Newark "an officer to be designated superintendent of buildings." This is clearly providing for the appointment of one of "such other subordinate officers" not named in section 21 as the common council evidently thought "necessary for the better ordering and governing the said city."

That the position of superintendent of buildings is an office created by ordinance, under the power just stated, and that the occupant of that office is a city officer, there can be doubt. He is in no sense an employe. He is an official. The ordinance creating the office fixes no term, and in default thereof, under the provision of the city charter, above quoted, he only continues in office "until the office for which he shall have been appointed shall be declared vacant or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

The record brought up shows that the common council of the city of Newark, on November 9th, 1900, adopted a motion declaring the office of superintendent of buildings, held by the prosecutor, vacant, and, at the same meeting, by motion, appointed Leslie B. Miller superintendent of buildings, to take effect at once. The proof is that Mr. Miller qualified by taking the oath of office and at once entering upon the duties of his office. Both by the act of the common council in declaring the office held by the prosecutor vacant, and by its appointment of Miller to succeed him and his entry upon the duties of the office, was the term of the prosecutor ended.

It is contended that such was not the effect of the action of the council, for two reasons:

*First,* because, on April 13th, 1890, the common council,

by resolution duly adopted, appointed the prosecutor superintendent of buildings for a term of two years, and that he had accepted the office in writing, and that it was a contract with the city which it could not defeat, and hence the declaring the office vacant was illegal.

The case of *Hardy* v. *Orange, 32 Vroom* 620, is relied upon to sustain this proposition.

This contention is without substance. The case of Hardy *v.* Orange was evidently not intended to change the rule applicable to municipal officers as declared many years ago in Gear *v.* Hoboken. *City of Hoboken* v. *Gear, 3 Dutcher* 265.

Mr. Justice Gummere, in *Uffert* v. *Voigt,* 47 *Atl. Rep.* 225, refers to the misconception of the scope of the case of Hardy *v.* Orange, and reaffirms the doctrine in Hoboken *v.* Gear.

If the case of Uffert *v.* Voigt shall be affirmed by the Court of Appeals, the principles declared by Chief Justice Green, in Hoboken *v.* Gear, will become the settled law of this state. It is clearly applicable to this case.

The *second* insistment is that the prosecutor was, in fact, inspector of buildings of the city of Newark, and held under "An act concerning inspectors of buildings in cities of this state," approved April 28th, 1886, as amended by a supplement, approved March 8th, 1899. These acts do authorize the appointment of such an officer as inspector of buildings, and do authorize the council to fix his term of office at not exceeding two years.

It is a sufficient answer to this last position to state that the common council, in the record before us, has not appointed the prosecutor to such office. We have already found that the prosecutor's office exists under the charter and ordinance of the city of Newark, and this statute therefore has no relevancy to the controversy. The prosecutor did not hold the office of inspector of buildings created by the act of 1886. He held, prior to his removal, the office of superintendent of buildings, an office created by an ordinance of the city, and he held that office subject to the power of removal under the city charter.

The term of office of officers created by the common council of Newark and appointed under the authority conferred by section 21 of the city charter is until the office for which the appointment is made shall be declared vacant. The council cannot change the term as fixed by the city charter by a resolution undertaking to make a fixed term for such an office.

Such officers hold at the pleasure of the council only.

The prosecutor's office having been legally declared vacant, he is without standing, and the writ will be dismissed, with costs.