STATE, EX REL. CORNELIUS V. BOORUM, A MEMBER, &c., RELATOR AND PLAINTIFF IN ERROR, v. JAMES F. CONNELLY, CLERK OF THE CITY OF NEWARK, RE-SPONDENT AND DEFENDANT IN ERROR.

| 66 | 197 |
| 66 | 587 |
| 66 | 197 |
| 69 | 352 |
| 69 | 651 |

Argued March 18, 1901—Decided March 25, 1901.

1. There are two sorts of classifications known to the law for the purpose of determining whether a law regulating the internal affairs of municipalities is general or special within article IV., section 7, paragraph 11, of the constitution. First, the common law classification of municipalities into counties, cities, boroughs, towns, townships and villages. This classification is recognized by the constitution. The other classification is statutory, adopted by the legislature for the adjustment of what has been called sub-classifications—that is, classifications of territory for the purpose of legislation less than, or not within, the common law classification.

2. Those rules which have been adopted for the purpose of determining whether a law regulating the internal affairs of municipalities is a general law, in the sense of the constitution, apply only to statutory classifications. The classification of counties, cities, towns, townships, boroughs and villages is a classification independent of statutory prescription; it rests on the common law, and is recognized by the constitution of this state; hence, in legislation regulating the internal affairs of municipalities, counties, cities, towns, townships, boroughs and villages are each a distinct class, within the constitutional intent; and laws applicable to either of these subdivisions are general and not special or local. Such legislation is, *per se*, constitutional, although the subject-matter of it may be appropriate as well to other places.

3. The act approved February 28th, 1901 (*Pamph. L., p.* 41), entitled "An act relative to the time of election and appointment and terms of office of officers elected or appointed in cities in this state," which provided that "in all cities in this state all officers required to be elected therein at any municipal or charter election shall be voted for and elected on the first Tuesday after the first Monday of November in each year"—the effect of which was to change the time of holding of such municipal elections from the spring to the fall—is a general law and is constitutional, although it applies to cities only. *Wanser v. Hoos,* 31 *Vroom* 412, distinguished.

4. The act further provided that every officer theretofore appointed by the mayor in any city, or appointed or chosen by the common council or other governing body of any city, and holding office therein at the passage of this act, should continue in office, and his term of office should be and thereby was extended from the

time when his term would otherwise expire until the first day of January next succeeding the date at which his term of office would otherwise expire. *Held*, that this provision did not violate article IV., section 7, paragraph 4, of the constitution, requiring that every law shall embrace but one object, which shall be expressed in the title.

5. In giving effect to this clause of the constitution, the courts give paramount consideration to the general objects of the act. The general object. of the act being ascertained, the legislature may include in it provisions of multiform character, designed to carry into execution the legislative purpose, which are not inconsistent with, or foreign to, the general object of the act.

6. The object of this statute is to change the time of holding elections for certain local officers of the cities of this state from spring to fall. The extension of the terms of office of the several city officers until successors could be elected at the election provided for, is cognate to the subject-matter of this legislation and is embraced in the title.

On application for a *mandamus*. On error to the Supreme Court.

An act of the legislature approved February 28th, 1901, enacted:

"1. Hereafter, in all cities in this state, all officers required to be elected therein at any municipal or charter election, shall be voted for and elected on the first Tuesday after the first Monday of November in each year, and with the same registration and upon the same official ballots required by law for the election of state and county officers, and not otherwise; and the said ballots voted as aforesaid for such officers shall be canvassed, and the result of any such election therefor shall be determined as now provided by law in the case of county officers, and certified to the clerk of such city; it being the intention hereby to consolidate the municipal or charter election in cities with the general or state election.

"2. The term of office of every such elective officer (except justices of the peace) heretofore elected in any city, and holding office at the passage of this act, shall be and hereby is extended from the time when his term would otherwise expire until twelve o'clock noon of the first day of January next succeeding the date at which his term of office would otherwise expire; provided, that this section shall not apply

to any officer whose term of office now expires by law on the first day of January in any year.

"3. Every officer heretofore appointed by the mayor in any city, or appointed or chosen by the common council or other governing body of any city, and holding office therein at the passage of this act, shall continue in office, and his term of office shall be and hereby is extended from the time when his term would otherwise expire until twelve o'clock noon of the first day of January next succeeding the date at which his term of office would otherwise expire; provided, that this section shall not apply to any officer whose term of office now expires by law on the first day of January in any year.

"4. The terms of office of all officers (except justices of the peace) hereafter elected in any city shall commence at twelve o'clock noon on the first day of January next succeeding their election, and continue for the respective terms of years now fixed by law; and the terms of office of all officers hereafter appointed by the mayor of any city, or appointed or chosen by the common council or other governing body of any city, except to fill vacancies, shall commence on the first day of January of the year in which they are appointed, and continue for the respective terms of years now fixed by law, when said term is for a definite period; provided, however, that no appointment of any officer shall be made by the mayor of any city for a term of office to commence after the expiration of the term of said mayor, or by the common council or other governing body of any city for a term of office to commence after the expiration of the term of any member of said common council or other governing body.

"5. All vacancies in offices in any city of this state arising from or created by any other cause than expiration of term of office, shall be filled for the unexpired term only; vacancies in elective offices shall hereafter be filled at the next general or state election, and not otherwise.

"6. The powers, duties and authority of every officer whose term of office is extended by this act are hereby continued in full force and effect for and during the period of such extension.

"7. Every officer now or hereafter holding any office covered by the provisions of this act (except justices of the peace) shall continue to hold such office, and to exercise the duties thereof, notwithstanding the time limited for its continuance shall have expired, until his successor has been chosen and qualified, unless sooner removed in the manner provided by law.

"8. All acts and parts of acts, special or general, inconsistent with the provisions of this act, are hereby repealed.

"9. This act shall take effect immediately."

A rule was obtained by the relator for a writ of *mandamus*, commanding James F. Connelly, the clerk of the city of Newark, to deliver to the board of registry and election of the Fifth district of the Fourth ward of the city of Newark copies of the registers of the previous general election, appertaining to the said Fifth district, and all necessary poll-books, registry-books, blanks for returns and supplies for said Fifth district necessary for the proper carrying into effect the provisions of an act entitled "An act to regulate elections," approved April 14th, 1898, preparatory to an election in said city to be held on the 9th of April, 1901. The respondent, in answer to the rule to show cause, pleaded that by an act of the legislature of this state entitled "An act relative to the time of election and appointment and terms of office of officers elected or appointed in cities in this state," approved February 28th, 1901, the charter election in the city of Newark previously held in April was required to be held on the first Tuesday after the first Monday of November in each year. On the argument before the Supreme Court the rule to show cause was discharged and the application for the writ was denied.

From this judgment of the Supreme Court this writ of error was sued out.

For the relator and plaintiff in error, *Samuel Kalisch.*

For the respondent and defendant in error, *Thomas N. McCarter.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. On the argument before the Supreme Court and in this court the contention was that the act in question was unconstitutional, on which it was insisted in this court that the judgment of the Supreme Court was erroneous.

The main ground on which this contention was rested was that the act is special and local, regulating the internal affairs of cities, in contravention of article IV., section 7, paragraph 11, of the constitution. This constitutional provision interdicts private, local or special laws in a number of enumerated cases, among which is contained "regulating the internal affairs of towns and counties." It also provides that the legislature shall pass general laws providing for the cases enumerated in the paragraph, and for all other cases which, in its judgment, may be provided for by general laws.

As was said by Chief Justice Beasley, in *Van Riper* v. *Parsons,* 11 *Vroom* 1, 10: "The purpose of this constitutional clause was not to limit legislation, but to forbid only the doing, by special or local laws, those things that can be done by general laws. The provision relates to the methods and not to the substance of legislation; and the substitution of general laws, in the stead of those that are special or local, necessarily indicates the limits and extent of the prohibition; for as the mandate is to do, by general legislation, that which is interdicted to special or local legislation, it seems unavoidably to follow that it is only those things that can be accomplished by the former method that are forbidden to the latter method." The Chief Justice also said, in another part of his opinion, that "all legislation is based, of necessity, on a classification of its subjects, and when such classification is fairly made, and the legislation founded upon it is appropriate to such classification, such legislation is as legitimate now as it would have been prior to the amendments to the constitution." *Id.* 8.

There are two sorts of classifications known to the law for the purposes of legislation. First, the common law classification of municipalities into counties, cities, boroughs, towns,

townships and villages. This classification is recognized by the constitution. Article I., paragraph 19. The other classification is statutory, adopted by the legislature for the adjustment of what has been called subclassifications—that is, classifications of territory for the purposes of legislation less than, or not within, the common law classifications.

The first time that *Van Riper* v. *Parsons,* 11 *Vroom* 1, was before the Supreme Court it was held that, within the sense of these prohibitory clauses, a general law, as contradistinguished from one special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class. The second time that case passed under judicial examination the holding was that a law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects which, having regard to the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law, without regard to the consideration that within this state there happens to be but one individual of that class or one place where it produces effects. *Id.* 123. To the same effect is *Rutgers* v. *New Brunswick,* 13 *Id.* 51.

These rules for determining the constitutionality of acts of the legislature relating to the internal affairs of municipalities apply only to statutory classifications which are adopted by the legislature to answer some purpose not within the range of the common law classifications of counties, cities, boroughs, towns, townships and villages.

Legislation applicable to all the counties, or all the cities, or all the boroughs, towns, townships or villages in this state, is not subject to the principle which has been mentioned, for the reason that they are common law classifications recognized by the constitution. The law now in question is applicable to all the cities of this state.

As early as *Anderson* v. *Trenton,* 13 *Vroom* 486, decided November Term, 1880, the distinction above referred to was recognized. A statute purporting to confer upon all cities

having a population of not less than twenty-five thousand
inhabitants the power to issue bonds to fund their floating
debt, was held to be a special law, in violation of the consti-
tution. In the course of his opinion, Mr. Justice Dixon
said: "Doubtless a law embracing all the cities or all the
townships would be constitutional; for these bodies, because
of their marked peculiarities, are, by common consent, re-
garded as distinct forms of municipal government, and so
constituting classes by themselves." *Anderson* v. *Trenton,
Id.* 486, 487. In *Fitzgerald* v. *New Brunswick,* 18 *Id.* 479,
487, it was held by the Supreme Court that, for the pur-
poses of legislation in relation to the police department, cities
constituted a class. In the course of his opinion, Mr. Justice
Reed discusses and disposes of some of the questions that
were argued in this case. He said: "It is objected that the
act does not apply to municipalities other than cities. It is
remarked that there exists in the state some municipalities
which, under the name of boroughs, have populations as great
and interests as important as some municipalities incorpo-
rated under the name of cities; that in the charters of the
former are clauses almost or entirely identical with that of
the city of New Brunswick and other cities of the state in
regard to the organization and control of the police depart-
ment. This all appears to be true. It is therefrom argued
that a classification which includes only cities is not valid
in respect to legislation concerning a subject like this, which
is common to both cities and boroughs. Could the point
involved in this contention be now regarded as open for
discussion, untrammeled by previous judgments, it would
present, in my opinion, a question not easily resolved in
favor of the classification. But the recognition of cities as
a class for legislative purposes in respect to other subjects,
as obviously common to both cities and boroughs as this,
seems to have been too frequent to be now disregarded in
this court. No subject would seem to be of more general
and uniform importance to both cities and boroughs than
that of assessments for local improvements. Yet the recogni-
tion of the validity of statutes in regard to this subject,

applying alone to cities, has been frequent." A number of cases to this effect were cited by the learned judge; it is not necessary to reproduce the citations here.

*New Brunswick* v. *Filzgerald,* 19 *Vroom* 457, 487, 488, was affirmed in this court. On the argument here it was earnestly contended that the act in question was not a general law, on the ground that it was based upon a defective classification. The opinion in this court was delivered by Chief Justice Beasley. The contention just referred to was disposed of by the Chief Justice in these words: "In the Supreme Court, so far as this point was concerned, the subject was disposed of on the ground that this classification had been so repeatedly recognized in judicial decisions and in acts of legislation as not to be open to further discussion, but that it was to be treated as *res adjudicata.* In that view this court entirely concurs." The opinion of the Chief Justice is given more importance by the fact that one clause in the section of the act which was quoted was held to be special, from the fact that there were words in it which limited the effect of it to cities where the police department held office *quam bene se gesserint,* which made the law, to that extent, special.

*In re Commissioners of Elizabeth,* 20 *Vroom* 488, it was held that, for the purposes of legislation, cities constitute a class, and a law applicable to cities only is not in contravention of the constitution. The legislation under consideration in this case was the well-known Martin act, the provisions of which would be equally appropriate to boroughs, towns and townships as to cities. This case was recently affirmed in this court. An act applying to every county in the state, empowering the board of chosen freeholders to perform certain duties in relation to public roads, has been held to be constitutional. *Miles* v. *Freeholders of Bergen,* 23 *Id.* 302. The principle adjudged in the foregoing cases is sustained by all the decisions, without a single dissent. *Noonan* v. *County of Hudson,* 23 *Id.* 398; *Bowyer* v. *Camden,* 21 *Id.* 87; *State* v. *Borough of Clayton,* 24 *Id.* 277.

In *Johnson* v. *Asbury Park,* 29 *Vroom* 604, an act respecting licenses in boroughs of this state was held by the Supreme

Court to be constitutional. It was argued against the validity of that statute that no reason could be given for granting certain special powers to one class of the municipalities and withholding them from other classes. This argument was discredited, and it was held that the division of municipalities into cities, towns, townships and boroughs, being a classification permitted by the constitution for the purposes of local government, powers to be conferred upon these bodies severally, which pertain to the ordinary functions of local government, must rest in legislative discretion. The act in question in that case applied only to boroughs. The judgment was affirmed in this court. *Johnson* v. *Asbury Park,* 31 *Id.* 427. It was there held that "legislation empowering boroughs to license certain trades and occupations, and to raise revenue by such license fees, is not obnoxious to the constitutional prohibition against special legislation, because it does not apply to other municipalities of higher or lower degree."

In *Crookall* v. *Matthews,* 32 *Vroom* 349; affirmed in this court, 33 *Id.* 799, it was decided that townships form a proper class for legislation affecting the term of office of assessors. This decision was also rested on the principle that towns, townships, boroughs and cities in legislation are treated as municipalities belonging to different classes; hence, an act of the legislature which applies to one class only is, within the meaning of the constitution, a general law. An act relating to the improvement of streets and the construction of sewers in the cities of this state was held to be a general law, although it applied only to cities. *Jelliff* v. *Newark,* 19 *Id.* 101. In the prior case of *Green* v. *Hotaling,* 15 *Id.* 347, an act providing for assessment for the construction and continuation of sewers, which applied to cities only, was held to be constitutional. The decision in this case was affirmed in this court. *Green* v. *Hotaling,* 17 *Id.* 207.

Finally, in *Hermann* v. *Guttenberg,* 34 *Vroom* 616, 621, 624, it was decided by this court that incorporated cities, boroughs, towns and villages, as well as townships, are recognized by the constitution as classes for legislation, and that

laws limited to either of such classes do not violate the constitutional prohibition of private, local or special laws. It was also decided that the courts cannot inquire whether a municipality, or class of municipalities, is titular only, and that the classification of the legislature in that regard is conclusive. The decision of this court in this respect was designed to be decisive on this subject. Mr. Justice Collins, in his opinion, after citing and discussing the antecedent cases, uses this language: "These adjudications lead to a comprehensive decision in favor of the constitutional right of the legislature to classify towns by their style of incorporation, at least to the extent hereinafter to be stated, and for such a result there seems to be sound reason." The learned justice alludes to legislation as to cities, towns, townships, &c., in which the acts contained in statutes having such a title have been declared unconstitutional; but he declares that that result was due to the fact that the provisions contained in such acts were invalid because of unwarranted classification. He adds: "Whether or not these laws be valid, no possible exception can be taken to a law that brings in all of a class."

It will be observed that in all these cases the legislation sustained applied to some one of the common law classifications, and that the subject-matter of such legislation would have been as appropriate to other subdivisions as to those specifically embraced in it. Such acts of the legislature are, in a constitutional sense, general laws.

The act now in question requires that all the officers to be elected at any municipal or charter election shall be voted for and elected on the first Tuesday after the first Monday of November in each year. The act applies to all the cities in this state. The court has been furnished with a list of the cities, with the population of each, and also of the towns, townships and boroughs of the state with a population of over three thousand. It appears from this schedule that in the different counties of this state there are towns, townships, boroughs, &c., each containing a population in excess of some of the cities in the same county. If the classifica-

tion in such cases were statutory, that fact would be decisive
if this legislation were based upon the statutory classifica-
tion. But it is not. The classification of cities, towns, town-
ships, boroughs and villages is a classification independent
of statutory prescriptions. It rests on the common law, and
it is recognized by the constitution of this state; hence, an
act of the legislature which applies to any one of these politi-
cal subdivisions is a general law, not obnoxious to that pro-
vision of the constitution which prohibits local or special
laws regulating the internal affairs of cities, &c.

The subdivision of the common law municipalities into
subordinate classes is a legislative classification, and legisla-
tion with respect to any of such classes depends upon the
appropriateness of such legislative classification. Classifica-
tion acts have been passed dividing cities, towns, townships,
boroughs and villages into classes on the basis of population.
The office of these classification acts is simply to provide a
rule of construction for municipal legislation. A statute
framed in compliance with such acts will be construed accord-
ingly, and upon such a construction the question will arise
whether the classification adopted is such, in substance, as to
bring the statute within the category of general laws. They
are statutes for interpreting enactments concerning munici-
palities. Beyond this effect, legislation conforming to such
subdivisions is incapable of exercising any force or controll-
ing effect upon either the legislature or the courts. In all
such cases the validity or invalidity of the statute which is
the product of these classifications depends upon those con-
siderations which will confer upon a statute, local and special
on its face, the quality of a general law. *Warner* v. *Hoag-
land,* 22 *Vroom* 62; *Calvo* v. *Westcott,* 26 *Id.* 78; *Wanser* v.
*Hoos,* 31 *Id.* 482, 525; *Foley* v. *Hoboken,* 32 *Id.* 478, 481.

In *Mortland* v. *Christian,* 23 *Vroom* 521, 537, Mr. Justice
Garrison, delivering the opinion of this court, in a case where
the legislation was directed to counties of the first class, said:
"That the counties to be affected are referred to as of the
first class does not touch the constitutionality of the act, if
its subject-matter be one having a natural relation to popu-

lation. The cases of *Randolph* v. *Wood*, 20 *Id.* 85; *S. C.,* 21 *Id.* 175; *Paul* v. *Gloucester County, Id.* 585, and notably *Warner* v. *Hoagland,* 22 *Id.* 62, have put this subject at rest, and delimit the functions of the Classification act." In *Wanser* v. *Hoos,* 31 *Id.* 482, 525, it was said that "the question whether any particular statute is local or special must be ·determined, not upon its compliance with a *legislative* classification, but upon whether, having regard to the character of the legislation and the limitation upon it contained in the act, the statute is or is not a general law as defined· by the courts. *Wanser* v. *Hoos, supra,* and *Lowthorp* v. *Trenton,* 33 *Vroom* 795, are instances of legislation based upon a subclassification. In the first case the legislation applied only to cities of the first class; in the other case it applied only to cities of the second class. In both cases the statute was held to be unconstitutional, for the reason that, as applied to the subdivisions of cities, the act was local and special. These cases, contrasted with *Fitzgerald* v. *New Brunswick, Johnson* v: *Asbury Park* and *Hermann* v. *Guttenberg, supra,* illustrate the principle which has uniformly controlled the courts in deciding upon the constitutionality of statutes which apply to the internal affairs of municipalities. In such legislation cities, boroughs, towns, townships and villages are each a distinct class, within the constitutional intent, and laws applicable to either of these subdivisions are general and not special or local, and such legislation is, *per se,* constitutional, although the subject-matter of it may be appropriate as well to other places. On the other hand, with respect to the subdivisions of these common law municipalities, the subdivision being a legislative act, the constitutionality of laws relating to either or any of them is determined by the sufficiency of such classifications, having regard to the subject-matter of the legislation.

Nor is this act obnoxious to the constitutional prescription which provides that "to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall em-

brace but one object, and that shall be expressed in the title."
Article IV., section 7, placitum 4.

The title of the act in question is "An act relative to the
time of election and appointment and terms of office of
officers elected or appointed in cities in this state." It is only
in a plain case that a statute will be declared void because
its title does not express the object of the law. *State, ex rel.
Richards,* v. *Hammer,* 13 *Vroom* 435. In the case last cited,
in a statute under the title of "An act relating to the assess-
ment and revision of taxes in cities of this state," it was
held to be competent to include provisions changing the mode
of appointing members of boards of assessment and revision.
Where the subject of legislation is of a general character,
all matters reasonably connected with it, which are appro-
priate to accomplish or facilitate the object of the act, may
be embraced in it without infringing the constitutional inter-
dict which prohibits the intermixing of such things as have
no proper relation to each other. *In re Commissioners of
Elizabeth, supra.* "The constitutional requirement that the
object of every law shall be expressed in its title is satisfied
when the title fairly indicates the general object of the sta-
tute, although it does not indicate the means or method of
attaining that object." *Bumsted* v. *Govern,* 18 *Vroom* 368.

In giving effect to this clause of the constitution the courts
give paramount consideration to the general object of the
act. The general object of the act being ascertained, the
legislature may include in it provisions of multiform char-
acter, designed to carry into execution the legislative purpose,
which are not inconsistent with or foreign to the general
object of the act. Thus, under an act entitled "An act to
cede to the mayor and common council of Jersey City cer-
tain lands of the state now and heretofore under the tide-
waters of Communipaw bay, and to establish a tide-water
basin adjacent thereto," it was held that the grant to Jersey
City of that part of it next to the city, with a duty to im-
prove the same for a basin, with power to erect wharves and
to regulate and control the use of such basin and wharves,
and to charge dockage and wharfage, and the dedication of

the residue of the tract for a public basin, might be embraced in one act—the grant of one part to the city and the dedication of the other to the public being simply means to carry into execution the general object of the legislative scheme. *Easton and Amboy Railroad Co.* v. *Central Railroad Co. of New Jersey,* 23 *Vroom* 267.

The object of this statute was to change the time of the holding of elections for local officers in the cities of this state from the spring to the fall. Every provision contained in it is cognate to the subject-matter of this legislation. In *Warner* v. *Hoagland,* 22 *Vroom* 62, under an act entitled "An act concerning the construction, care and improvement of the public ways, parks and sewers in certain of the cities of this state, and assessment for the same," powers over this subject were conferred upon the common council or board of aldermen. A section of the statute provided that the office of every officer, commission or board possessing any of the powers mentioned in the act should cease, determine and be abolished. It was held that abolishing the offices of other officers having the jurisdiction and powers conferred on the common council or board of aldermen, was cognate to the object of the act, and that the purpose to abolish such offices need not be expressly mentioned in the title of the act. By a parity of reasoning, the extension of the terms of office of the several city officials until successors could be elected at the election provided for, is cognate to this legislation, and is embraced in the title.

Finding no infirmity in this legislation, on constitutional grounds, the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.  12

*For reversal*—VROOM.  1.