94 N.J. Super. 341 (1967)
228 A.2d 349
GEORGE C. WILLIAMS, PLAINTIFF-RESPONDENT,
v.
JAMES SMITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1967.
Decided March 31, 1967.
*343 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. William D. Dilks argued the cause for appellant.
Mr. William E. Hughes argued the cause for respondent.
PER CURIAM.
Defendant appeals from a Law Division judgment ordering his ouster as building inspector of Gloucester City and restoring plaintiff to that position. The sole question here is whether R.S. 40:171-168, granting tenure to building inspectors appointed in cities of the second class, is unconstitutional as special legislation. The facts are uncontroverted.
The local governing body by resolution appointed plaintiff to be building inspector for a three-year term, effective February 5, 1956. He served in that capacity until February 5, 1965, having twice been reappointed for similar terms in the interim. On January 1, 1965, the governing body, by resolution effective February 5 following, appointed defendant as building inspector. Plaintiff unsuccessfully objected to the appointment, claiming tenure under R.S. 40:171-168 which provides that building inspectors in second-class cities shall hold office during good behavior and not be removed except for inefficiency, incapacity, conduct unbecoming an employee, or other just cause, and then only after written notice and a hearing.
Plaintiff brought a proceeding in lieu of prerogative writs, claiming he was rightfully entitled to the office of building inspector under the cited statute and that defendant unlawfully held that office, and demanding judgment ousting defendant and restoring plaintiff thereto. Defendant answered, and by way of defense alleged that the statute, passed in 1914 (L. 1914, c. 50, § 1) was unconstitutional in that it violated Art. IV, Sec. VII, par. 11 of the 1844 New Jersey Constitution, and also Art. IV, Sec. VII, par. 9(5) and 9(13) of our 1947 Constitution. Defendant conceded that the statute was adopted as a general law and not as a *344 special one, so that no notice of intention to apply therefor had been given, as was then required by Art. IV, Sec. VII, par. 9 of the 1844 Constitution. He also stipulated that Gloucester City is a second-class city. After oral argument the trial judge held the statute constitutional and entered the judgment here under appeal.
Our Constitution of 1844 was effective when the 1914 act was passed. Art. IV, Sec. VII, par. 11 of that Constitution (amended in 1875) provided, in pertinent part, that
"The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say:

* * * * * * * *
Regulating the internal affairs of towns and counties; appointing local offices or commissions to regulate municipal affairs.

* * * * * * * *
The legislature shall pass general laws providing for the cases enumerated in this paragraph, and for all other cases which, in its judgment, may be provided for by general laws. * * *"
The classification of cities by population for purposes of municipal legislation goes back to 1882. L. 1882, c. 46, now R.S. 40:167-1 and 2. Cities of the first class are those having a population exceeding 150,000; those of the second class a population of 12,000 to 150,000; those of the third class a population of less than 12,000, except cities bordering upon the Atlantic Ocean and being seaside and summer resorts; and, finally, those of the fourth class, consisting of cities bordering upon the Atlantic Ocean and being seaside and summer resorts.
Defendant contends that in all municipalities of this State, excepting second-class cities, building inspectors are appointed for a fixed term, citing by way of example N.J.S.A. 40:87-15 for boroughs, N.J.S.A. 40:145-12 and 13 for townships, and R.S. 40:171-58 for cities. But see R.S. 40:158-7 (villages) and R.S. 40:125-3 (towns). It is only by virtue of the 1914 act (R.S. 40:171-168) that building inspectors in second-class cities gained tenure of office from the first day of their appointment. Defendant argues that there is no rational relation between the class of cities subject *345 to that act and its object; therefore, it is special legislation, unconstitutional under the cited provisions of the 1844 and 1947 Constitutions. He poses this inquiry: If the purpose of the 1914 act was to prevent the removal of building inspectors from office for political or arbitrary reasons, why should not the same consideration obtain in the case of boroughs, townships and cities other than those of the second class?
We note at the outset that the statute in question has its counterpart in legislation applicable to cities of the first class: R.S. 40:171-123 is identical to the 1914 act, except that it refers to "superintendents of buildings." In Peal v. City of Newark, 66 N.J.L. 265, 272-273 (E. & A. 1901), reversing 66 N.J.L. 105 (Sup. Ct. 1901), the court held that the head of the local building department, known as the "Superintendent," was the building inspector, however styled. Since these two statutes reflect a common pattern, the real issue here is whether tenure provisions for building inspectors in non-seashore cities with more than 12,000 population only, creates such an unreasonable classification as to violate the constitutional ban on special legislation. If population is at all relevant to such tenure, the classification is reasonable and the statute must stand. Cf. Bucino v. Malone, 12 N.J. 330, 345 (1953); In re Haynes, 54 N.J.L. 6, 28 (Sup. Ct. 1891); see also 2 McQuillin, Municipal Corporations (3d rev. ed. 1966), § 4.57, p. 108; § 4.70, pp. 120-122 and § 4.73, p. 130.
There is no legislative history to enlighten us as to what motivated the 1914 legislation. The statute has been before our courts only twice, and on neither occasion was its constitutionality questioned or discussed. Plaintiff's claim was sustained in each instance. Thus, in Pellegrino v. Evans, 133 N.J.L. 159 (Sup. Ct. 1945), a building inspector successfully challenged his ouster and replacement; and in Avella v. City of Garfield, 126 N.J.L. 507 (Sup. Ct. 1941), a reduction in the building inspector's salary was declared illegal.
*346 There is, nonetheless, a strong presumption that a statute is constitutional. Harvey v. Essex County Board of Chosen Freeholders, 30 N.J. 381, 388 (1959). As was said in In re Loch Arbour, 25 N.J. 258, 264-265 (1957), all doubts are resolved in favor of constitutionality; it is the policy of our law not to invalidate a statute which has been in force without substantial change for many years, unless its unconstitutionality is obvious.
The court in Attorney General v. McKelvey, 78 N.J.L. 621 (E. & A. 1910), said:
"An examination of the numerous decisions of our courts since the adoption of the amendment of 1875 [to the 1844 Constitution] prohibiting private, local or special laws regulating the internal affairs of towns and counties, demonstrates that a law would be general although it embraces only a class of cities formed on the basis of their population according to the discretion of the legislature, provided the law deals merely with the structure and machinery of government, and provided the class does not appear to have been formed illusively. The cases go further, however, and demonstrate that a classification will not be deemed illusive merely because the effect is to make the legislation applicable to cities of a certain size only. * * *" (at page 624)
It is well settled that the ban on special legislation does not extend to the common law classifications of counties, cities, boroughs, towns, townships and villages. Boorum v. Connelly, 66 N.J.L. 197, 202-206 (E. & A. 1901); In re Loch Arbour, above, 25 N.J., at pages 265-266; 2 McQuillin, op. cit., § 4.57, p. 108. These classifications were recognized by our 1844 Constitution, Art. I, par. 19 (added in 1875), and in the 1947 Constitution, Art. VIII, Sec. III, par. 2. Any statute whose provisions are limited to one of them, or to a valid statutory subclassification within one of them, as here, must stand. That some municipalities in one or more of these common law classifications may be of similar population size to second-class cities is beside the point.
We therefore hold that the fact that tenure is provided for building inspectors in cities of the second class (and, as we have seen, in those of the first class), and not in *347 cities of the third or fourth class or, indeed, in municipalities that are not cities, does not render the statute in question unconstitutional as a special law. It is well established that the Legislature has a wide range of discretion in selecting the means of accomplishing its goals, and such distinctions as it makes will be presumed to rest upon a rational basis if there is any conceivable set of facts which would afford reasonable ground therefor.
The 1914 Legislature probably had in mind that in the more populous municipalities, where experience and presumed integrity were required in the important work of dealing with varied and ofttimes important and substantial construction, the officer charged with the responsibility of supervising and approving such work should have protection in his office through a grant of tenure. For it was in the larger urban centers  at least then  where most building construction was taking place. It was in precisely these localities that expertise was required and political insulation demanded.
In our view, the distinction made by the Legislature in providing building inspectors with tenure in first- and second-class cities was not arbitrary. It cannot successfully be challenged because some may consider the legislation unwise. The Legislature made a policy decision, and we will not disturb it. We find population to be a meaningful classification in this case. Thus the presumption of constitutionality, especially strong when a statute has been enforced without substantial challenge for many years (In re Loch Arbour, above) has not been met.
The judgment is affirmed.