268 N.J. Super. 279 (1993)
633 A.2d 566
GERD VOGES, PLAINTIFF-APPELLANT,
v.
BOROUGH OF TINTON FALLS, MAYOR AND COUNCIL OF THE BOROUGH OF TINTON FALLS, ANTHONY MUSCILLO, BOROUGH ADMINISTRATOR, BOROUGH OF TINTON FALLS, LOUIS RAUPP, CONSTRUCTION OFFICIAL, BOROUGH OF TINTON FALLS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1993.
Decided November 15, 1993.
*282 Before Judges LONG and LANDAU.
Paul A. Massaro argued the cause for appellant.
*283 Sharon Handrock Moore argued the cause for respondents (Gebhardt & Kiefer, attorneys; Ms. Moore, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Gerd Voges appeals from a judgement which dismissed his complaint in lieu of prerogative writs following a bench trial in the Law Division. Voges, employed as the Tinton Falls Plumbing Subcode Official, sought damages arising from allegedly improper reduction of his hours and salary to part-time status, and asserted civil rights claims under 42 U.S.C. § 1983 against the Borough of Tinton Falls (Borough); its Mayor and Council; Anthony Muscillo, the Borough Administrator; and Louis Raupp, the Construction Official (collectively "respondents").
Voges left a similar position in another municipality and on April 1, 1988, accepted appointment to a four-year term as the Borough's full-time plumbing subcode official. The appointment was made pursuant to the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 to -141 (hereinafter U.C.C.A.). Voges worked 40 hours per week until 1989 when his work week was changed to 37 1/2 hours, and then again reduced in 1990 to 35 hours. Despite the reduction in hours, his initial $40,000.00 annual salary was increased by seven percent annually, commensurate with increases given to other Borough officials.
The plumbing subcode official is part of the Borough's Division of Code Enforcement. The Division is supposed to be self-funded by revenues generated from fees charged for inspections, permits, and plan reviews. Owing to an expected decline in construction activity, respondents reduced the Division's budget for 1991.
On December 17, 1990, appellant was notified, in writing, that his work hours would be reduced from thirty-five to twenty-one hours per week, effective January 1, 1991, with a corresponding salary reduction. The reduction was fixed at twenty-one hours per week in order that Voges, who had been ill, could retain his *284 health benefits. The work hours of the building subcode official and the electrical subcode official were reduced at that time. Later, the building inspector and one secretary were also reduced to part-time status. All of these jobs were part-time at the time of trial.
Voges demanded a hearing on the reduction of hours pursuant to N.J.S.A. 52:27D-126b. Although the Borough took the position that a hearing was not required under the U.C.C.A., Voges received an informal hearing before the Borough Administrator, respondent Anthony Muscillo, seven weeks after the reduction in his salary and hours. He objected to Muscillo acting as the hearing officer because Muscillo himself had made the decision to put appellant on part-time status. The informal hearing consisted of a private meeting between Voges and Muscillo, over Voges' objection that the hearing should be public. Muscillo rendered an opinion denying appellant's restoration to full-time service.
Voges then initiated this action, seeking restoration to full-time status, retroactive back pay, compensatory and punitive damages for violations of 42 U.S.C. § 1983, as well as attorneys fees pursuant to 42 U.S.C. § 1988.
The trial judge found, as a matter of law, that N.J.S.A. 52:27D-126b does not afford appellant protection from a reduction in hours and compensation, because it speaks only to "removal" from office and not to reductions in compensation. The judge also found as a fact that the Borough reduced appellant's hours and salary in good faith and for economic reasons. Accordingly, he ruled that a predetermination hearing was not required before the decision to reduce appellant's hours and compensation became effective, and dismissed Voges' complaint.
Upon careful study of the record, in light of the arguments raised by appellant, we affirm dismissal of the complaint, but for different reasons than those cited by the trial judge.
This case raises the novel question whether N.J.S.A. 52-27D-126b affords to a person appointed to a four year term as a full-time *285 employee protection from a reduction in his salary and work hours during that term. We hold that it does, except if the reduction is shown to be attributable to a good faith effort to cut expenditures during a period of fiscal constraint.
In pertinent part, N.J.S.A. 52-27D-126b provides:
A construction official or subcode official in a noncivil service municipality shall be appointed for a term of 4 years and shall, upon appointment to a second consecutive term or on or after the commencement of a fifth consecutive year of service, including years of service in an equivalent job title held prior to the adoption of the State Uniform Construction Code, be granted tenure and shall not be removed from office except for just cause after a fair and impartial hearing.

[N.J.S.A. 52:27D-126b (emphasis added)].
This court's fundamental duty in construing a statute is to ascertain the purpose and intent of the Legislature. We may freely allude to the legislative history to discern the sense and meaning of the language used. Dept. of Health v. Sol Schnoll Dressed Poultry Co., 102 N.J. Super. 172, 176, 245 A.2d 532 (App.Div. 1968). "Statutes can not be read in a vacuum void of relevant historical and policy considerations and related legislation." Helfrich v. Hamilton Tp., 182 N.J. Super. 365, 70, 440 A.2d 1366 (App.Div. 1981) (citations omitted). We must read the words of the statute in accordance with their plain and ordinary meaning, see, Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976), and afford a construction which considers these words in the context of the entire statute, ascribing to them a common-sense meaning which advances the legislative purpose. See Cressey v. Campus Chefs, Div. of CVI Service, Inc., 204 N.J. Super. 337, 342-43, 498 A.2d 1274 (App.Div. 1985).
In enacting the U.C.C.A. the Legislature sought to establish uniform statewide building and construction standards. N.J.S.A. 52:27D-120; N.J. State Plumbing Inspectors Ass'n v. Sheehan, 163 N.J. Super. 398, 401, 394 A.2d 1244 (App.Div. 1978), certif. denied, 79 N.J. 484, 401 A.2d 239 (1979). To that end, enforcement of the U.C.C.A. was placed under the general administration and supervision of the New Jersey Department of Community *286 Affairs. N.J.S.A. 52:27D-124. Only officials licensed by the Commissioner of Community Affairs are permitted to administer and enforce the code. See N.J.A.C. 5:23-5.1 to -5.5 as to licensing and N.J.A.C. 5:23-4.4 to -4.5 as to duties. As we stated in N.J. State Plumbing Inspectors Ass'n, supra, "[a]fter many years of local control by literally hundreds of municipalities, with varying construction regulations and enforcement policies, the need for uniformity provided by the act is indeed self-evident." 163 N.J. Super. at 401, 394 A.2d 1244.
Moreover, through the U.C.C.A. the State has preempted the entire field of code enforcement. J.P. Properties, Inc. v. Macy, 183 N.J. Super. 572, 576, 444 A.2d 1131 (Law Div. 1982). For example, the Department of Community Affairs has the exclusive right to discipline officials by suspending or revoking their license. Ibid. Each subcode official (building subcode, electrical subcode, plumbing subcode, and fire protection subcode) is vested with the sole responsibility of carrying out inspections and plan reviews for their particular subcode area. N.J.S.A. 52:27D-126. This legislative scheme evidences a strong State policy to establish uniformly high professional standards for construction officials and inspectors charged with Code enforcement and to ensure the advancement of this policy by freeing code officials from the possibility of local pressures or intimidation.
Protection of local code officials from arbitrary interference or removal in the performance of their duties during their terms in office was part of the legislative intent in adopting U.C.C.A. As we interpret N.J.S.A. 52:27D-126b, a subcode official must be appointed for a four year term and can only be removed from office during the term for just cause after a fair and impartial hearing, as if tenure under the statute had been achieved. "It is clear that the legislative intent was to insure the appointment of licensed professional municipal building code officials and to ensure that their tenure in office be free of or influenced by local politics." DeStefano v. Washington Tp., 220 N.J. Super. 273, 277, 531 A.2d 1090 (Law Div. 1987); see also *287 Helfrich, 182 N.J. Super. at 369-74, 440 A.2d 1366; Golaine v. Cardinale, 142 N.J. Super. 385, 393-94, 361 A.2d 593 (Law Div. 1976), aff'd, 163 N.J. Super. 453, 395 A.2d 218 (App.Div. 1978) certif. denied, 79 N.J. 497, 401 A.2d 252 (1979) (Public policy demands that officers be protected in the performance of their offices during their term). Moreover, an October 7, 1975, statement issued by the Governor in connection with his signing of the U.C.C.A. is instructive:
The bill also is intended to improve the standards of code enforcement. It sets forth qualifications for local code enforcement officials, but it provides protection for those now holding office.
The trial judge's restrictive reading of the "no removal except for just cause" provision to exclude mid-term reduction in hours and compensation offers too easy a means for frustrating the legislative goals. Inasmuch as anti-conflict restrictions do not allow local code officials to engage in private employment in the municipality for which they work as code officials or in any adjacent municipalities, N.J.A.C. 5:23-4.5, those professionals must rely primarily on their municipal job for their livelihood. From a practical standpoint there is little difference between removal and a dramatic reduction in work hours and compensation. This was not what the legislature intended when it adopted N.J.S.A. 52:27D-126b. See Helfrich, 182 N.J. Super. at 370, 440 A.2d 1366. Accordingly, we hold that N.J.S.A. 52-27D-126b must afford a code official protection from an arbitrary reduction in work hours and compensation during the statutorily protected term of employment.
It is well settled, however, that the power of a municipality to abolish a position within its departments for bona fide reasons of economy is not diminished by statutory job protections. Pros. Det., Essex Cty. v. Hudson Bd. Freeholders, 130 N.J. Super. 30, 43, 324 A.2d 897 (App.Div. 1974) certif. denied, 66 N.J. 330, 331 A.2d 30 (1974); Santucci v. Paterson, 113 N.J.L. 192, 193, 173 A. 611 (1934); Newark v. Civil Service Commission, 112 N.J.L. 571, 574-75, 172 A. 589 (1934) aff'd, 114 N.J.L. 185, 176 A. 164 (1935); Hartman v. City of Providence, 636 F. Supp. 1395, 1409-11 (D.R.I. *288 1986). In Pros. Det., Essex Cty. v. Hudson Bd. Freeholders, supra, we stated that:
[I]t is well settled that a classified civil servant may be discharged or his position abolished when the desire is a good faith effort to achieve governmental economy or efficiency and the action is taken in the public interest. In such a circumstance there is no threat of circumvention of the policy against political or other prohibited considerations. Moreover, there is a presumption that the action of the employer was taken in good faith and the burden is on the employee to show the contrary.
[130 N.J. Super. at 43, 324 A.2d 897 (citations omitted)].
Similarly, in Santucci, supra, the plaintiff, a plumbing inspector, lost his job when his position was abolished. Plaintiff contended that abolition of his position was a mere pretext and in contravention of the Civil Service laws, which provided that no employee in the classified civil service shall be removed, discharged or reduced in pay or position, "until he shall have been furnished with a written statement of the reasons for such action and been allowed a reasonable time in which to make written answer thereto." 113 N.J.L. at 193, 173 A. 611. The Supreme Court held that, since plaintiff's bad faith claim was entirely without merit, the Civil Service laws were not applicable because the position was abolished for reasons of economy. Ibid. Our Supreme Court has posed the issue as:
The question, as we view it, is, not narrowly whether a plan conceived and adopted for the purpose of saving money actually, in operation, attained its purpose but, whether the design in adopting the plan was to accomplish economy or, on the contrary, was to effect the removal of a public employe, [sic] protected by civil service, without following the statutory procedure.
[Newark, supra, 112 N.J.L. at 574, 172 A. 589].
Consequently, we conclude that so long as the reduction is truly job-related and not person-directed, that is, if the reduction of the position is not a mere pretext for removing a person from office position or employment, the government's actions may not be challenged under the "no removal except for cause" standard.
In the instant case, the trial judge found that "[t]he record at bar is completely devoid of any evidence that the reduction in plaintiff's hours was based on anything but an interest in governmental efficiency or that there was bad faith on the part of any *289 defendant in this matter." After careful review of the record, we are satisfied that this finding is supported by adequate and substantial credible evidence. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974); R. 2:11-3(e)(1)(A).
We note, for example, that respondents had developed a reduced budget for 1991 based on their expectation that construction activity would decrease in the municipality. See N.J.S.A. 40:69A-45 to -48. Voges and others in the department had their work hours and salary reduced. As we noted above, only the work hours of the building subcode official, the electrical subcode official, and the plumbing subcode official were initially reduced. The work hours of the electrical subcode official were reduced to fourteen per week. In recognition of Voges' health problems his hours were reduced to twenty-one so that his health benefits could be retained. This is not the mark of sinister motivation. Significantly, there are no allegations of personal animus or improper exertion of pressure. Moreover, the fact that three subcode offices and the job of building inspector remained part-time lends credence to respondents' claim that the reduction in Voges' work hours and compensation was motivated by budgetary considerations.
We note that Voges is no longer employed, having left following a compensable work-related injury. He had been restored to full-time status briefly before that event. Voges argues that the restoration to full-time status establishes that there should have been no reduction. The respondents say that it was necessary to return Voges to full-time status only because of a backlog generated primarily by time off which he took for vacation, personal reasons, and illness. The test, however, is not whether the fiscally based reduction was soundly conceived, but whether it was solely and properly motivated only by economic concerns. Newark, supra, 112 N.J.L. at 574, 172 A. 589.
As no hearing at the municipal level was required under N.J.S.A. 52:27D-126b in this case, it is not necessary to address *290 Voges' arguments relating to the informal nature of the municipal level hearing.
We recognize that there must be a forum in which one can challenge the good faith of an economically motivated reduction. In this case, the trial court adequately served that purpose because Voges was given the opportunity to make a record directed at the basis for the decision, as well as to assert his other arguments.
The trial judge evaluated all the evidence presented at trial and concluded that respondents had acted in good faith for budgetary reasons. We hold that the record supports that conclusion. R. 2:11-3(e)(1)(A).
On appeal, appellant also argues that the trial judge abused his discretion by allowing into evidence respondents' testimony of diminished construction activity while excluding appellant's rebuttal testimony that plumbing subcode activity had increased. We have reviewed the proffered evidence, and although we conclude that the trial judge should have considered the testimony as relevant to the good faith issue, we find the exclusion to be harmless error, particularly in the context of a bench trial.
Actually, the testimony does not rebut respondents' claim that they were motivated by financial constraints. The issue is not whether the reduction plan achieved its goal, but whether in adopting the plan, respondents were motivated by a desire to accomplish economic efficiency or by a desire to remove appellant. Newark, 112 N.J.L. at 574, 172 A. 589.
Appellant also appeals from the dismissal of his 42 U.S.C. § 1983 action. Based on our holding in this opinion, appellant has failed to establish the existence of a § 1983 claim. See Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988). To establish a claim under § 1983, appellant must prove that respondents acted under color of state law and that respondents deprived appellant of a Federal statutory or Constitutional right. Kirk, 109 N.J. at 185, 536 A.2d 229; Perez v. Cucci, 725 F. Supp. 209, 231 *291 (D.N.J. 1989), aff'd, 898 F.2d 142 (3rd Cir.1990). A public employee acts under color of state law when he acts in his official capacity or exercises his responsibilities pursuant to state law. Perez, supra, 725 F. Supp. at 231 (quoting West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988)).
The thrust of appellant's § 1983 action is that he was deprived of his property right without being afforded an opportunity to be heard. However, appellant's rights were not violated because state law does not require that appellant be given a local hearing when his position is reduced in good faith for economic reasons, as discussed above. We are satisfied that the trial judge's finding that respondents acted in good faith for economic reasons is supported by substantial credible evidence in the record. Rova Farms Resort, supra. Accordingly, we conclude that appellant's § 1983 complaint was properly dismissed.
Affirmed.