**Michael MOODY, Plaintiff,**

v.

**TOWNSHIP OF MARLBORO, et al., Defendants.**

**Civ. No. 90–2387 (CSF).**

United States District Court, D. New Jersey.

June 13, 1994.

Breuninger & Hansen by Patricia F. Breuninger, Fanwood, NJ, for plaintiff.

Law Offices of Arthur Goldzweig by Arthur N. Goldzweig, Manalapan, NJ, for Tp of Marlboro.

Helmer, Kassel & Stowell by Michael J. Kassel, Haddon Heights, NJ, for Chief of Police, Joseph Walker.

## OPINION

CLARKSON S. FISHER, District Judge.

A jury verdict of $780, or a week's pay to the plaintiff, is followed here by an application for attorney's fees in the amount of $175,793.75. Of course, this application is hotly resisted.

Plaintiff, a patrolman in the Marlboro Police Department, brought various federal and state claims against his employers in response to disciplinary action taken against him, including a five-day suspension, resulting from his criticism of and opposition to a monthly summons-production policy which plaintiff alleged constituted an illegal quota system. Specifically, the present action involved claims under the federal and state constitutions, 42 U.S.C. §§ 1983 and 1985 and New Jersey's Conscientious Employee Protection Act ("CEPA"), as well as intentional torts. On September 18, 1992, the jury returned a verdict and found, by way of interrogatories, a violation of plaintiff's First Amendment rights and a violation of CEPA. Judgment in the amount of $780.00 was entered in favor of plaintiff and against defendants, Township of Marlboro, Township of Marlboro Police Department, Joseph Walker

and Donald Andrews. All of the other claims were ultimately dismissed.

By order dated January 20, 1993, the court granted defendants' motion for judgment notwithstanding the verdict on plaintiff's First Amendment claim, and judgment was entered in favor of defendants. The court also denied plaintiff's motion for a new trial on plaintiff's CEPA claim and reserved on plaintiff's motion for attorneys' fees under 42 U.S.C. § 1988 and N.J.S.A. 34:19–5(e) pending appeal of the judgment notwithstanding the verdict. By order dated February 15, 1994, the Third Circuit Court of Appeals affirmed this court's order dated January 20, 1993. Plaintiff now moves for a total award of $175,793.75, representing full award of attorney's fees as well as an enhancer of the lodestar figure to compensate for the delay in receipt of payment of counsel fees and costs, after deductions for services it claims are related solely to the First Amendment claim. Both parties acknowledge that N.J.S.A. 34:19–5(e) is the sole legal authority for any award of fees in the wake of the Court of Appeals' disposition in this matter.

■ Plaintiff contends that its CEPA claim and First Amendment claim were so connected—being based on a common core of facts—that no exclusions are warranted and that plaintiff, by virtue of its recovery on the CEPA claim, is a "prevailing party" for purposes of entitlement and calculation of reasonable attorney's fees (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Defendants assert that the award of attorney's fees under N.J.S.A. 34:19–5(e) is strictly in the court's discretion. Defendants urge that the court exercise its discretion not to award any fees under that statute, since the plaintiff lost on all federal claims, both in trial court and on appeal, the total amount of the award ($780.00) is nominal and the CEPA claims were a minor part of the entire action. These competing arguments clearly suggest that a dispute exists between the parties respecting the legal standards that this court should employ in determining plaintiff's entitlement to fees under N.J.S.A. 34:19–5(e).

N.J.S.A. 34:19–5 provides, in pertinent part, that:

Upon a violation of any of the provisions of this act, an aggrieved employee may, within one year, institute a civil action in a court of competent jurisdiction.... The court *may* ... order:

a. An injunction to restrain continued violation of this act;

b. The reinstatement of the employee to the same position held before the retaliatory action;

c. The reinstatement of full fringe benefits and seniority rights;

d. The compensation for lost wages, benefits and seniority rights;

e. The payment by the employer of reasonable costs, and attorney's fees;

f. Punitive damages; or

g. An assessment of a civil fine of not more than $1,000.00 for the first violation of the act and not more than $5,000.00 for each subsequent violation, which shall be paid to the State Treasurer for deposit in the General Fund.

(Emphasis mine).

Plaintiff argues that, for purposes of determining entitlement, the statute is comparable in its provisions to 42 U.S.C. § 1988 and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1, et seq., and plaintiff cites the importance of CEPA litigation as a means of encouraging employees to expose illegal acts of employers and protecting "whistle-blowers." Plaintiff suggests that the fee provision in CEPA invokes the comparable provisions of 42 U.S.C. § 1988 and the NJLAD and their underlying recognition of the necessity of encouraging plaintiffs to act as "private attorneys general" in order to effectuate congressional or state policy embodied by legislation.

■ I embark here on uncharted waters. When determining the law applicable to a pendent state claim, "[i]n the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981). Decisions of a state's lower appellate courts are presumptive evidence of

state law. *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632, 642–43 (D.N.J.1991). In this case, both parties acknowledge that the New Jersey Courts have not yet addressed what legal standards govern entitlement to fees under N.J.S.A. 34:19–5(e).

■ With regard to the task of predicting what standard the state high court would employ in determining entitlement to attorney's fees under CEPA, this court's "fundamental duty" in construing 34:19–5(e) is to "ascertain the purpose and intent of the Legislature." *Voges v. Borough of Tinton Falls*, 268 N.J.Super. 279, 284, 633 A.2d 566 (App. Div.1993), *cert. denied*, 135 N.J. 466, 640 A.2d 848 (1994). The legislative history of the CEPA statute guides the court's analysis in discerning the "sense and meaning of the language used." *Voges*, 268 N.J.Super. at 284, 633 A.2d 566 (citing *Dept. of Health v. Sol Schnoll Dressed Poultry Co.*, 102 N.J.Super. 172, 176, 245 A.2d 532 (App.Div.1968)).

The court in *Voges* highlighted the principles of construction that should frame the instant analysis:

> "Statutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation" (quoting *Helfrich v. Hamilton Tp.*, 182 N.J.Super. 365, 370 [440 A.2d 1366] (App.Div. (1981))). We must read the words of the statute in accordance with their plain and ordinary meaning ... and afford a construction which considers these words in the context of the entire statute, ascribing to them a common-sense meaning which advances the legislative purpose.

*Id.* 268 N.J.Super. at 285, 633 A.2d 566 (citations omitted).

■ In enacting CEPA (New Jersey whistle-blower statute), the legislature sought to protect employees from retaliatory action by employers. "The aim of the bill is to discourage collusion between employers for the purpose of inhibiting disclosure by their employees of violations of law committed by either employer." N.J.S.A. 34:19–3, *Assembly Labor Committee Statement*. With this purpose in mind, the court addresses the plain meaning of the statute, construing its language in the context of the entire statute and affording a common-sense meaning which advances the self-proclaimed purpose of protecting employees from retaliatory actions.

Upon review of the language of 34:19–5(e) itself and the accompanying legislative history, the court is persuaded that the plain meaning of that statute, read as a whole, makes the award of attorney's fees, among other remedies, strictly discretionary with the court. *See GE Solid State, Inc. v. Director, Div. of Taxation*, 132 N.J. 298, 307, 625 A.2d 468 (1993) (fundamental canon of statutory construction requires that a statute be interpreted only according to the plain meaning of its clear and unambiguous language without resort to extrinsic aid). Here, the statute clearly provides that, among other relief, "[t]he court may ... order ... [t]he payment by the employer of reasonable costs, and attorneys' fees." Likewise, the legislative history mirrors the discretionary language employed in the statute. *See Senate Labor, Industry and Professions Committee, Statement to Senate No. 1105*, dated Feb. 24, 1986, at 1 ("relief ... may include" an array of remedies, including reasonable attorney's fees); *Assembly Labor Committee, Statement to Senate, No. 1105, with Assembly Committee Amendments*, dated May 22, 1986, at 1 (remedy "may include any of the following forms of relief," including reasonable attorney's fees).

Viewed in the context of the ordinary meaning of the statute read in conjunction with the legislative history, it becomes patently clear that the New Jersey Legislature explicitly intended to promulgate a range of CEPA remedies conferred to the discretion of the court. The court cannot ignore the fact that, unlike § 1988, the CEPA statute itself clearly enumerates several alternative forms of relief available to an employee who litigates a CEPA claim and makes no reference to "prevailing party" status; the structure and language of the CEPA statute are distinct from the attorney's fees shifting provisions of § 1988 and N.J.S.A. 10:5–27.1, both of which specifically correlate reasonable at-

torney's fees to "prevailing party" status.[1] Essentially, the mechanics of the statute, clearly and unambiguously outlined therein, apparently reflects the legislature's intention to afford employees a range of remedies conferred to the court's discretion in addressing each and every unique CEPA claim litigated before the courts. Any other construction would negate the plain and ordinary meaning of the statute. Furthermore, I note that plaintiff did, in fact, recover "compensation for lost wages" for the CEPA claim, a degree of relief clearly anticipated by the statute for particular CEPA claims and which, under the mechanics of the statute, is inextricably tied to the exercise of this court's discretion in fashioning appropriate relief under the circumstances presented.

■ Of course, the court must consider the vital policy considerations underlying promulgation of the CEPA legislation. The "whistle-blower" statute is designed to protect an employee from the consequences, including loss of economic livelihood, of employer retaliatory action in situations where an employee discloses, threatens to disclose or testifies regarding any of the employer's policies and practices which the employee believes are in violation of the law. It would be disingenuous to ignore the necessity of deterrence measured by appropriate employee remedies to effect the legislative purpose. Nevertheless, the court is guided by the premise, based on the clear mechanics of the statute itself, that the exercise of the court's discretion in shaping the form of relief on a case-by-case basis, including any award of attorney's fees, best advances the legislative purpose underlying CEPA.

■ With these principles in mind, I must evaluate the present case. The only legal basis for the instant application resides in 34:19–5(e). A number of factors present in this matter are salient for purposes of determining entitlement to and reasonableness of attorney's fees. First, the jury did find that defendants violated CEPA, and the employer retaliatory action in this matter was stopped, in the sense that plaintiff's suspension was overturned. Second, there is no indication in the record that plaintiff had any questionable subjective motivation in bringing the suit. Third, there is no indication that the action was frivolous in any respect. Finally, the self-proclaimed legislative policy of deterring employer retaliatory action should extend to the unjustified employee suspension in this matter. Taken together, these factors compel the court to award plaintiff reasonable attorney's fees in this matter. Implicit in this approach is the recognition that real deterrent value is an essential component of any award of reasonable attorney's fees to a plaintiff under CEPA. The court is sensitive to the fact that a particular result in any given CEPA claim may not necessarily implicate any deterrence concerns such that there is a rationally measured need for the award of attorney's fees.

■ While sensitive to the efficacy of deterrence, the court cannot, and should not, ignore the degree of relief obtained by plaintiff in relation to the scope of the litigation as a whole; this factor is essential for purposes of deriving a reasonable fee award under CEPA. An assessment of this case from its inception through trial readily reveals that the CEPA claim was a minor part of plaintiff's overall claim, particularly since the thrust of the action centered on constitutional claims. Likewise, it is also apparent that plaintiff's counsel expended a substantial number of hours on this matter inclusive of the CEPA claim. In addition, the parties

---

1. N.J.S.A. 10:5–27.1, the fee-shifting provision of the N.J.L.A.D., is structured and phrased along the lines of 42 U.S.C. § 1988. The statute provides:

In any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee as part of the cost, provided however, that no attorney's fee shall be awarded to respondent unless there is a determination that the charge was brought in bad faith.

It is apparent that the legislature, in promulgating 10:5–27.1, structured a distinct statute along the lines of 42 U.S.C. § 1988 controlling fee shifting in Title VII cases, in stark contrast to the CEPA statute, which prescribes an array of relief, including award of reasonable attorney's fees, conferred to the discretion of the court in addressing individual employer-retaliation cases. The legislature did not explicitly or impliedly provide for fee shifting in CEPA actions along the lines of 42 U.S.C. § 1988 or 10 N.J.S.A. 10:5–27.1.

have not furnished a satisfactory manner by which to segregate the constitutional claims from the CEPA claim. Accordingly, the court is inclined to make a substantial downward adjustment of the amount of fees sought by plaintiff in order to achieve a reasonable figure taking into account the results obtained by plaintiff in relation to the scope of the litigation as a whole.

Even if § 1988 standards were applied to CEPA claims, the court is persuaded that a substantially reduced award is also warranted under 42 U.S.C. § 1988 analysis. Section 1988 permits a "prevailing party" in a civil rights action to recover reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Primarily, it should be noted that in evaluating how much of a fee should be granted, "a district court retains a great deal of discretion in deciding what a reasonable fee award is...." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir.1989).

In *Hensley*, the court established the analytical framework to be employed under § 1988. The court is satisfied that plaintiff is a "prevailing party" for purposes of fee analysis under CEPA. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Accordingly, it remains for this court to determine what fees are reasonable.

The starting point is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Id.* Other considerations, including "results obtained," may lead to a downward adjustment. *Id.* at 434, 103 S.Ct. at 1940. The present action involved First Amendment violations under 42 U.S.C. § 1983, violations under the New Jersey Constitution, conspiracy to violate plaintiff's civil rights in violation of 42 U.S.C. § 1985 and violations under CEPA. All of plaintiff's federal claims were ultimately dismissed.

The court is persuaded by plaintiff's argument that the CEPA claim is factually related to the constitutional claims. Nevertheless, the court is presented with plaintiff's partial success measured by the outcome of the CEPA suit, since the nature of this ac-

tion, reflected by the pretrial and trial stages, compels this court to conclude that plaintiff's CEPA success is limited in relation to the scope of the litigation as a whole. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. Accordingly, this court must award that amount of fees that is reasonable in relation to the results obtained. *Id.* "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *Id.* at 436–37, 103 S.Ct. at 1941. The court deems the latter approach to be the more equitable under the circumstances of this case.

Based on the foregoing analysis, the court finds that an award of $25,000.00 is reasonable in this case, either for purposes of discretionary analysis or "prevailing party" analysis under N.J.S.A. 34:19–5. An order accompanies this opinion.