765 A.2d 1064 (2001)
336 N.J. Super. 578
Donald G. VIVIANI, Plaintiff-Respondent,
v.
BOROUGH OF BOGOTA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 20, 2000.
Decided February 7, 2001.
*1066 Contant, Scherby & Atkins, Hackensack, attorneys for appellants (Andrew T. Fede, of counsel and on the brief).
Cuccio & Cuccio, Hackensack, attorneys for respondent (Emil S. Cuccio, on the brief).
Thomas J. Orr, Burlington, attorney for the Amicus Curiae, New Jersey State Exempt Firemen's Association, Inc. (John Justin, on the brief).
Before Judges WALLACE, Jr., CARCHMAN and LINTNER.
*1065 The opinion of the court was delivered by LINTNER, J.A.D.
The central issue raised by this appeal is whether the provisions of the Exempt Firemen's Tenure Act, N.J.S.A. 40A:14-60 to -65 (the Act), prevents a municipality from a good faith elimination of a position, held by an employee occupying exempt fireman status, for valid cost reduction reasons. Judge Harris held that N.J.S.A. 40A:14-65 prevents municipalities from abolishing positions held by exempt firemen in all circumstances except "widespread economic depression or mandatory retrenchment." We agree and affirm.
The undisputed facts are as follows. Plaintiff joined defendant's volunteer fire department in 1968 and received a certificate of exemption pursuant to N.J.S.A. 40A:14-55 to -59 in 1977. In 1990, defendant adopted an ordinance appointing plaintiff to a full time position of laborer in defendant's Department of Public Works (DPW). For many years prior to his appointment, plaintiff had served as a temporary seasonal laborer. In 1991, the DPW was comprised of eighteen employees headed by a superintendent and a foreman. In an effort to avoid having to pay overtime to the foreman, who was a member of the collective bargaining unit, defendant's mayor and council created, by ordinance, a new salaried position of Assistant Superintendent. Plaintiff was appointed to the position of Assistant Superintendent in April 1992.
Between 1992 and 1996, defendant reduced its DPW workforce from eighteen to nine. In 1994, defendant decided to reduce the costs associated with the DPW by privatizing its trash collection and recycling functions, leaving the department responsible for maintenance and repair of defendant's roads, buildings, sewers, parks and other public areas. In January 1996, a new mayor and council majority took office finding itself faced with what defendant described as a double-edged hardship. The previous administration had increased defendant's operating budget each year from 1988 to 1995. In 1996, defendant faced an immediate cut of $187,000 and future phase-out in Density Aid, a State program that had been instituted in 1991, which provided revenue to densely-populated municipalities. Defendant undertook a systematic review of all its spending, which resulted in reductions in spending commencing in 1996 and continuing each year into 1999. As part of its efforts to reduce spending, the Mayor and Council adopted Ordinance No. 1115 (the Ordinance) on March 1, 1996, eliminating plaintiff's position of Assistant Superintendent of the DPW.[1] Because of plaintiff's position in seniority, he remained on the work force as a laborer after the abolishment of his supervisory position.
On June 19, 1996, plaintiff filed an Order to Show Cause and Verified Complaint in Lieu of Prerogative Writ seeking injunctive relief restraining defendant from enforcing the Ordinance, and reinstating plaintiff's position and salary. The complaint alleged that defendant violated (1) his tenure rights as an exempt fireman by *1067 adopting the Ordinance and abolishing the position of Assistant Superintendent of Public Works and (2) his rights under the New Jersey Law Against Discrimination.
Injunctive relief was denied. Thereafter, the New Jersey Exempt Firemen's Association was granted leave to participate as Amicus Curiae. A subsequent motion for summary judgment filed by defendant seeking to dismiss plaintiff's complaint as time barred, pursuant to R. 4:69, was denied. Plaintiff abandoned his constitutional and LAD based claims and a bench trial, limited to plaintiff's claim that defendant's adoption of the Ordinance was in violation of the Act, commenced before Judge Harris.
Judge Harris found that defendant was precluded by N.J.S.A. 40A:14-65 from abolishing plaintiff's position as Assistant Superintendent for good faith economic reasons. Defendant raises essentially three issues on appeal:

POINT ITHE TRIAL JUDGE ERRED WHEN HE FOUND THAT DEFENDANT'S GOOD FAITH ADOPTION OF THE ORDINANCE ELIMINATING AN UNNECESSARY OFFICE VIOLATED PLAINTIFF'S TENURE RIGHTS AS AN EXEMPT FIREMAN.

POINT IITHE TRIAL JUDGE'S INTERPRETATION OF N.J.S.A. 40A:14-65 VIOLATED THE NEW JERSEY CONSTITUTION BY EITHER CREATING A GIFT OF PUBLIC FUNDS OR CONSTITUTING SPECIAL LEGISLATION.

POINT IIITHE MOTION JUDGE ERRED IN REFUSING TO DISMISS PLAINTIFF'S COMPLAINT AS TIME BARRED PURSUANT TO R. 4:69-6(A).
We reject defendant's contentions and affirm. We agree with the conclusions reached by Judge Harris that, after tracing the evolution of N.J.S.A. 40A:14-65, the legislative purpose was to avoid the pre-1938 case law that construed the 1911 version of the Act to permit the discharge of exempt firemen employees for good faith reasons of economy.
Originating in 1911, the Act bestowed tenure on public employees who were exempt volunteer firemen, conferring upon them the right to retain their jobs during good behavior subject to removal only for good cause and after a hearing. L. 1911, c. 212, § 1. The law forbade removals "for political reasons." Ibid. In the section that is the ancestor of N.J.S.A. 40A:14-65, the 1911 act reads:
It shall not be lawful for any board of commissioners, mayor, aldermen, common council or any other governing body of any municipality in this State, or of any county in this State, or of any department of the State government, to abolish any position or office held by any exempt fireman of any volunteer fire department, volunteer fire engine, hook and ladder, hose or supply company or salvage corps of any city, town, township, borough or fire district of this State, holding an exempt certificate issued to him as an exempt member of any such volunteer fire department company or corps, or to change the title of any such office or position, or to reduce the emoluments thereof for the purpose of terminating the service of any such exempt fireman.

[L. 1911, c. 212, § 3 (emphasis added).]
The original purpose of the Act was to protect volunteer firemen from being removed from their public jobs without cause and "to prevent them from being affected by political changes in the state and municipal governments." Maxwell v. Board of Com'rs of City of Wildwood, 111 N.J.L. 181, 186, 168 A. 143 (Sup.Ct.1933), aff'd o.b., 113 N.J.L. 404, 174 A. 709 (E. & A.1934). That purpose continues to underlie the present version of the law: "to remove governmental employees from the shifting political currents in order to maintain continuity and to protect those who also give additional service without compensation *1068 to their communities." Smith v. Board of Chosen Freeholders of Bergen Cty., 139 N.J.Super. 229, 238, 353 A.2d 153 (Law Div.1976), aff'd o.b., 146 N.J.Super. 45, 368 A.2d 964 (App.Div.), certif. denied, 74 N.J. 266, 377 A.2d 671 (1977).
During the economic depression of the 1930s, our courts began interpreting the 1911 act as allowing governing bodies to discharge exempt firemen employees in good faith for reasons of economy, on the theory that public interest demanded that public employers had the inherent power to abolish positions that were unneeded, inefficient, or too expensive. See, e.g., Reck v. Board of Comm'rs of North Bergen, 110 N.J.L. 173, 176-77, 164 A. 468 (E. & A.1933); Johnson v. City of Asbury Park, 15 N.J. Misc. 13, 15-16, 188 A. 492 (Sup.Ct.1936). As a result, the protection afforded by the 1911 act was diluted whenever there was found to be a good faith (non-personal or non-political) reason for the abolition of an affected position.
In 1938, the Legislature revised the key section of the statute as follows:
No employment, office or position to which an exempt fireman has acquired tenure of office as herein provided, shall be abolished on the ground of economy or otherwise and said work, services or duties shall not be transferred to any other employee, department, office or position so that it results in the termination of the services of said exempt fireman or the reduction of the emoluments therefor except in time of widespread depression or mandatory retrenchment when transfer of duties, termination in service or reduction in emoluments of any office or position held by an exempt fireman under tenure may be made but only in the same ratio and to the same extent as in all other employments, offices or positions or the emoluments thereof under the control of the State or the particular county, municipality or board of education so affected.
[L. 1938, c. 385, § 4 (emphasis added).]
The revised act did not adopt the clause "for the purpose of terminating the service" used in the 1911 act. Thus, the 1938 act overruled the case law in effect by expressly precluding resort to economic reasons, and indeed any other reasons, for abolishing a position, excepting two special circumstances: "widespread depression or mandatory retrenchment."
Between 1938 and 1971, there were no reported opinions interpreting the Act in a context relevant to the present appeal. The current version, enacted in 1971, L. 1971, c. 197, is codified at N.J.S.A. 40A:14-65 and provides:
No department of the State government, nor any board of chosen freeholders of a county, governing body of a municipality or board of education shall abolish, change the title or reduce the emoluments of any office held by an exempt fireman having tenure therein, for economy reasons or otherwise, for the purpose of terminating his services, except in time of widespread economic depression or mandatory retrenchment, but in any such case, the termination or reduction shall be made in the same ratio as in the case of other employees.

[Emphasis added.]
Additionally, N.J.S.A. 40:14-63 of the 1971 act provides:
No department of the State government nor any board of chosen freeholders of a county, or governing body of a municipality, or a school board or board of education shall abolish, change the title or reduce the emoluments of any office or position held by an exempt fireman for the purpose of terminating his service.
There appears to be no legislative history explaining any of the three incarnations of the act (1911, 1938, and 1971), See Muccio v. Cronin, 135 N.J.Super. 315, 323, 343 A.2d 158 (Law Div.1975) (so stating as to the 1971 version). Nevertheless, we have *1069 recognized that the 1971 version of the statute worked no substantive change in the protections afforded exempt firemen. In re Fitzgerald, 188 N.J.Super. 476, 481-82, 457 A.2d 1208 (App.Div.1983); Bialkowski v. Borough of Ridgefield, 120 N.J.Super. 194, 197, 293 A.2d 671 (App. Div.), certif. denied, 62 N.J. 79, 299 A.2d 76 (1972).
Defendant maintains that Judge Harris failed to consider the provisions found in N.J.S.A. 40A:14-63 as they relate to the provisions set forth in N.J.S.A. 40A:14-65. In essence, defendant argues that, when read together, the appropriate construction is that a municipality may abolish an exempt fireman's office for the purpose of terminating the individual's services in times of depression or mandatory retrenchment. If, however, the purpose is not to terminate the individual, but to abolish the office for good economic reason or otherwise, the municipality is not limited to times of depression or mandatory retrenchment. Defendant asserts that Judge Harris "rewrote" the provisions of N.J.S.A. 40A:14-65 by suggesting that the word "or" should be read between the words "otherwise" and "for the purpose of."
To avoid the pre-1938 case law, the Legislature recognized the severity of the recent depression as an exception to its intention to make it difficult to abolish positions held by exempt firemen. When necessary to implement the legislative intent, a court may add words or disregard punctuation. Board of Chosen Freeholders v. State, 159 N.J. 565, 578, 732 A.2d 1053 (1999); State v. Madewell, 117 N.J.Super. 392, 396, 285 A.2d 34 (App.Div. 1971), aff'd, 63 N.J. 506, 309 A.2d 201 (1973). We agree with Judge Harris's findings that the 1971 version continued the same heightened protection afforded by the 1938 version. N.J.S.A. 40A:14-63, which was adopted as part of the 1971 version, substantially tracks the language of the 1911 act, which provided in part that an exempt fireman's position cannot be abolished if the real purpose is to terminate the individual's employment. By including the same phrase "for the purpose of terminating his services" in N.J.S.A. 40A:14-65, the Legislature expressed its intention that the prohibition does not stop there (but is, instead, extended further.) Stated another way, N.J.S.A. 40A:14-65 expresses the intention to prohibit the abolition of an exempt fireman's position for valid reasons (economic or otherwise), as well as the previously set forth invalid reasons (the pretextual purpose of terminating services).
Indeed, as observed by Judge Harris, the historical context in which the 1938 law was enacted suggests that the Legislature intended exactly what it statedto continue the tenured status of exempt firemen, thus prohibiting termination for personal reasons and, at the same time, eliminating the ability to abolish their public employment for traditional reasons of reduction of force, save the two very specific circumstances spelled out in the Act. Absent any indicia of a conflicting legislative aim, we must enforce the law as written. Chasin v. Montclair State Univ., 159 N.J. 418, 426, 732 A.2d 457 (1999).
Defendant's contention that Judge Harris's decision is inconsistent with the prior, unreported, Law Division decision opinion in Roe v. Borough of Upper Saddle River, No. BER-L-1628-98 (Law Div. June 21, 1999)[2], is misplaced. Unreported Law Division opinions have neither controlling nor precedential value. R. 1:36-3 (no unpublished opinion shall constitute precedent or be binding upon any court). See State v. One 1979 Pontiac Sunbird, 191 N.J.Super. 578, 468 A.2d 715 (App.Div.1983). Nevertheless, Judge Harris correctly found that the Law Division decision was distinguishable *1070 and not applicable because, unlike the circumstances with which he was confronted, those in Roe and Hansen, supra, dealt with competing and conflicting statutory provisions, which were claimed to supercede the provisions of the Act. See Smith v. Township of Livingston, 106 N.J.Super. 444, 256 A.2d 85 (Ch.Div.1969), aff'd o.b. 54 N.J. 525, 257 A.2d 698 (1969).
Defendant's reliance on the principle stated in Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 287, 633 A.2d 566 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994), that "the power of a municipality to abolish a position within its departments for bona fide reasons of economy is not diminished by statutory job protections," is equally misplaced. In Voges, the plaintiff, a borough subcode official, challenged his reduction in hours, which were imposed by the borough for good faith reasons of economy. The plaintiff sued under a provision of the State Uniform Construction Code Act that granted tenure to subcode officials and protected them from removal except for just cause. We construed "removal" to include the reduction in hours suffered by the plaintiff. However, because the reduction was prompted by valid economic reasons, we held that it was permitted under the "well settled" rule that positions may be abolished for bona fide reasons of economy. Id. at 287-88, 633 A.2d 566.
The statute at issue in Voges did not contain the kind of express prohibition on economically based abolition that appears in N.J.S.A. 40A:14-65. The Voges principle is commonly applied in the civil service context, in which there also is no proscription of the type involved here. See, e.g., DiMattia v. New Jersey Merit System Board, 325 N.J.Super. 368, 374, 739 A.2d 450 (App.Div.1999). Defendant's assertion that the power given a school board to take adverse actions in good faith and for reasons of economy or reorganization, is analogous, fails to acknowledge that it comes from an expressed statutory grant. Here, the statutory bar is unique to the extent that it expressly withholds what otherwise would be a public employer's inherent power, under the Voges principle, to abolish positions in times of reorganization and cost reductions.
The issue before us is not whether the Legislature acted wisely or in the most public-interested manner when it adopted N.J.S.A. 40A:14-65. Defendant laments the implications of Judge Harris's interpretation because it "creates an inequity to [defendant's] taxpayers by mandating the continuation of an office that is no longer necessary" and "hamper[s] the good faith efforts of New Jersey's municipalities to find new ways to deliver services to the public through regionalization and privatization." Even if we were convinced, which we are not, that the Legislature would modify the extraordinary protection afforded by the statute if revisited today, we must, nevertheless, apply the law as written without second-guessing its wisdom or fairness. Zois v. New Jersey Sports & Exp. Auth., 286 N.J.Super. 670, 675, 670 A.2d 92 (App.Div.1996). A reviewing court may not rewrite an otherwise constitutional law that it deems unwise or bad policy; only the Legislature may supply the needed correction. Piscataway Township Bd. of Educ. v. Caffiero, 86 N.J. 308, 318, 431 A.2d 799, appeal dismissed, 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981). See Williams v. Smith, 94 N.J.Super. 341, 347, 228 A.2d 349 (App.Div.1967), (in which we refused to disturb a policy choice by the Legislature with respect to tenure of local building inspectors, even though "some may consider the legislation unwise") aff'd o.b., 51 N.J. 161, 238 A.2d 457 (1968). This principle applies even when, as here, a party complains that the Legislature's choice will impair the fiscal integrity and operational efficiency of local governments. Thus, in Clark v. Degnan, 83 N.J. 393, 400, 416 A.2d 816 (1980), the Court invited counties to "direct their pleas to the Legislature" after refusing to interfere with the Cap Law, even though it would force counties into the "fiscal dilemma" of paying for *1071 programs over which they had no control. (footnote omitted). Accord, New Jersey State P.B.A., Local 29 v. Town of Irvington, 80 N.J. 271, 296-97, 403 A.2d 473 (1979) (that Cap Law will result in "reduced municipal services" and hardship to residents did not excuse court from its obligation to enforce the act as written); In re Charter School Application, 320 N.J.Super. 174, 227, 727 A.2d 15 (App.Div. 1999), (that Charter School Program Act had predictable adverse budgetary consequences for local districts that could be remedied only by Executive or Legislature, not the courts), aff'd as modified, 164 N.J. 316, 753 A.2d 687 (2000).
Defendant next contends that Judge Harris's construction of N.J.S.A. 40A:15-65 renders its provisions unconstitutional in two distinct ways. Defendant first argues that, by requiring municipalities to pay exempt firemen to serve in jobs which are no longer necessary, the statute violates the provisions of Article VIII of the New Jersey Constitution, which proscribes the use of public funds as gifts. Secondly, defendant reasons that Judge Harris's interpretation of N.J.S.A. 40A:14-65 violates the prohibition against special legislation found in Article IV. We are unconvinced.
The relevant Article VIII provisions are found in section three, paragraphs two and three:
No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.
[N.J. Const. art. VIII, § 3, ¶ 2.]
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.
[N.J. Const. art. VIII, § 3, ¶ 3.]
The purpose of these restrictions is to ensure that public money is used for public purposes only. In re Charter School, supra, 320 N.J.Super. at 228, 727 A.2d 15. "Public purpose" is broadly construed as connoting "an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government." Roe v. Kervick, 42 N.J. 191, 207, 199 A.2d 834 (1964). Accord, Charter School, supra, 320 N.J.Super. at 228, 727 A.2d 15. We have derived a two-part test to detect forbidden expenditure: "First, whether the provision of financial aid is for a public purpose, and second, whether the means to accomplish it are consonant with that purpose." Bryant v. City of Atlantic City, 309 N.J.Super. 596, 612, 707 A.2d 1072 (App.Div.1998). "[T]he determination of what constitutes a public purpose is primarily a function of the Legislature." Id. at 611, 707 A.2d 1072.
By enacting N.J.S.A. 40A:14-65, the Legislature has declared that there is an important public purpose to be achieved by extending special job protection to exempt firemen. The services provided by volunteer firemen benefit the community and are directly related to public safety and welfare, which is an elementary function of government. New Jersey Mortgage Finance Agency v. McCrane, 56 N.J. 414, 420, 267 A.2d 24 (1970); Smith, supra, 139 N.J.Super. at 238, 353 A.2d 153. Furthermore, the salary paid to plaintiff to continue in the position of assistant superintendent of DPW is, presumably, in return for services rendered as an employee of Defendant, thereby enuring to the benefit its taxpayers. Simply put it is not a gift.
Defendant's second constitutionally based argument relies on the Article IV bar against "special legislation." Because the issue embraces a matter involving the public interest, we will consider the questions raised concerning "special legislation" though not specifically raised before Judge Harris. State v. Churchdale Leasing, *1072 Inc., 115 N.J. 83, 100-01, 557 A.2d 277 (1989); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Article IV reads in pertinent part:
9. The Legislature shall not pass any private, special or local laws:
....
(13) Regulating the internal affairs of municipalities formed for local government and counties, except as otherwise in this Constitution provided.
[N.J. Const. art IV, § 7, ¶ 9(13).]
Our Supreme Court has adopted a three-part test for detecting "special legislation." Vreeland v. Byrne, 72 N.J. 292, 298-301, 370 A.2d 825 (1977). Accord, Brown v. Township of Old Bridge, 319 N.J.Super. 476, 508-09, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). First, the court must determine the law's purpose. Vreeland, supra, 72 N.J. at 298, 370 A.2d 825. Second, the court must ask "whether there are persons similarly situated to those embraced within the act, who, by the terms of the act, are excluded from its operation." Id. at 299, 370 A.2d 825. Finally, the court must decide whether the law's classification is reasonably related to its purpose. Id. at 299-301, 370 A.2d 825. The ultimate test is whether any person or entity who should be included is not so included; all those similarly situated to the pertinent class must be extended membership in that class, or else the law will be struck down. Phillips v. Curiale, 128 N.J. 608, 628-29, 608 A.2d 895 (1992); Brown, supra, 319 N.J.Super. at 508-09, 725 A.2d 1154.
Defendant maintains that N.J.S.A. 40A:14-65 is wanting under the Vreeland test. The purpose of encouraging volunteerism, argues defendant, should apply as well to some other tenured employees, including veterans; there is no rational basis to exclude such similarly situated employees from receiving the same benefits. Contrary to defendant's assumption, volunteer firefighters and veterans are not similar. The ostensible aim of N.J.S.A. 40A:14-65 is to encourage persons to join or continue to be members of volunteer fire departments. Smith, supra, 139 N.J.Super. at 238, 353 A.2d 153. As veterans have already completed their service, there is no need to encourage a similar continued commitment. Furthermore, veterans, as a class, are not limited to volunteers, nor do they serve without benefit of a corresponding salary. The Legislature has the power to choose among the range of possible beneficiaries, as long as it does not exclude beneficiaries that are similarly situated. Phillips, supra, 128 N.J. at 628-29, 608 A.2d 895; Brown, supra, 319 N.J.Super. at 507-09, 725 A.2d 1154. Judge Harris's construction of N.J.S.A. 40A:14-65 does not render it unconstitutional as special legislation.
Lastly, defendant contends the June 18, 1999, filing of plaintiff's Verified Complaint in Lieu of Prerogative Writ was untimely and, therefore, the motion judge erred in denying its motion to dismiss. R. 4:69-6(a) provides that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed...." The forty-five-day limit may be enlarged in the court's discretion "where it is manifest that the interest of justice so requires." R. 4:69-6(c). Defendant maintains that the latest accrual date was March 1, 1996, when the adoption of the Ordinance was published, thus proscribing a filing deadline of May 15.
Judge Guida's denial of defendant's motion was a sound exercise of judicial discretion. Our role is not to substitute our judgment for that of the trial court, but to decide whether the judge pursued a manifestly unjust course. Cosme v. Borough of East Newark Township Comm., 304 N.J.Super. 191, 202, 698 A.2d 1287 (App.Div.1997), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998). The reasons for a judge's exercise of discretion should be provided. Khoudary v. Salem County Bd. Soc. Servs., 281 N.J.Super. *1073 571, 578, 658 A.2d 1317 (App.Div.1995). Here, Judge Guida appropriately explained the reasons for exercising his discretion to enlarge the time period:
I'm going to extend the time for purposes of this case because of the issue which I do believe has to be developed, and it is an issue of import, in terms of the rights of exempt firemen I assume that are going to be tested here, so I'll extend the filing and hold that the filing of the prerogative write [sic] claim is timely.
Although the rule does not define "interest of justice," there are generally three decisional guidelines which delineate the kinds of interest that might qualify: "(1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." Brunetti v. Borough of New Milford, 68 N.J. 576, 586, 350 A.2d 19 (1975) (footnotes omitted). Accord, Adams v. DelMonte, 309 N.J.Super. 572, 580-81, 707 A.2d 1061 (App.Div. 1998). Although argued to the contrary, we cannot help but note that in the preliminary statement of its appellate brief defendant concedes that "[t]his appeal involves novel issues of public importance regarding the interpretation of the statutes that grant tenure in office to exempt volunteer firefighters." Judge Guida properly found that the issue presented encompassed the interest of all exempt firemen, thus being one of public importance.
Affirmed.
NOTES
[1] Ordinance No. 1115 was introduced on February 8, 1996 and passed by a three to two vote on February 22, 1996. The Notice of Adoption was published on March 1, 1996.
[2] We recognize that another Appellate panel has recently interpreted the Act differently. Roe v. Borough of Upper Saddle River, 336 N.J.Super. 566, 765 A.2d 779 (App.Div.2001). Both opinions are being filed simultaneously.