285 N.J. Super. 541 (1995)
667 A.2d 1070
IN THE MATTER OF STATE OF NEW JERSEY (DEPARTMENT OF ENVIRONMENTAL PROTECTION) RESPONDENT,
v.
THE COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1995.
Decided December 1, 1995.
*543 Before Judges SHEBELL, STERN and NEWMAN.
*544 Steven P. Weissman argued the cause for appellant (Weissman & Mintz, attorneys; Mr. Weissman, on the brief).
Mary L. Cupo-Cruz, Senior Deputy Attorney General argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Cupo-Cruz, on the brief).
Robert E. Anderson, General Counsel, New Jersey Public Employment Relations Commission argued the cause for respondent, New Jersey Public Employment Relations Commission (Mr. Anderson, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
On January 23, 1995, Governor Christine Todd Whitman, in her Budget in Brief, outlined a plan to save 6.7 million dollars by reducing the workweek of approximately 1/2 or 1,800 of the Department of Environmental Protection's (DEP or Department) employees by eliminating their 40 hour a week positions and moving them into 35 hour a week positions instead. The savings would be derived from employee pay reductions in accordance with N.J.A.C. 4A:3-4.2(b) and N.J.A.C. 4A:3-4.7. Employees would not lose any benefits or seniority rights, and would receive a higher hourly rate of pay for the hours actually worked, but not offsetting the loss caused by the reduced number of hours. Notwithstanding the reduction in hours, the governor maintained that DEP would still provide the same level of service. If the workweek were not reduced, it was estimated that an additional 158 DEP employees would need to be laid off to stay within the department's budget, thereby adversely affecting DEP's mission.
On January 25, the DEP informed the employees' union, Communication Workers of America (CWA), that the workweek reduction would take effect July 1, 1995. The CWA opposed the reduction and demanded that the State negotiate this issue as part of the collective bargaining for a new contract to replace the 1992-1995 *545 agreement. The State refused to negotiate, maintaining that the issue is not negotiable.
On February 6, 1995 CWA filed an unfair practice charge with the Public Employment Relations Commission (PERC) alleging that DEP's announced workweek reduction had had a "chilling effect" on upcoming negotiations, and requested interim relief that the State rescind the announcement. PERC issued an Order to Show Cause regarding the union's request for interlocutory relief. The State opposed the relief, asserting that the union alleged a failure to negotiate a matter that was not mandatorily negotiable, as it constituted "non-negotiable budget policy." The State contended, in part, that the reduction of the workweek was part of the Governor's program to reengineer State government, and one of many "cost-saving initiatives" to make government "smarter, leaner and more efficient." In the judgment of DEP management, it was "preferable" to utilize the layoff option of replacement of 40 hour positions with 35 hour positions in order to minimize any adverse impact upon DEP operations.
On April 6, 1995 PERC denied the requested injunctive relief without prejudice, reasoning that
In the absence of a demonstrated refusal to address these issues through collective negotiations, it would be inappropriate to review the merits of the parties' expressed legal positions....
On April 21, 1995 CWA again demanded that the reduction of hours be negotiated. Nonetheless, on April 24, 1995, DEP filed a layoff plan with the Department of Personnel (DOP) containing the information required by N.J.A.C. 4A:8-1.4. On May 7, 1995, CWA renewed its application for interim relief before PERC and filed a petition for a scope of negotiations determination.
On May 15, 1995, the Merit System Board (MSB) of the DOP, which regulates compensation and workweeks, see N.J.A.C. 4A:3-4.1 et seq., amended N.J.A.C. 4A:8-1.1 to extend the employer's statutory and managerial power to lay off employees to include demotions in the form of reductions in hours, thereby subjecting such reductions to the full panoply of Civil Service requirements, *546 including DOP review and approval of any layoff plan including a reduction in hours.
On May 18, 1995, DOP approved the DEP layoff/workweek reduction plan, and on May 22, 1995, the DEP responded to the union's renewed application for relief. Its brief noted that DOP approval of the layoff plan was itself a determination by DOP that the personnel action which the union argues is a negotiable change in work hours is, instead, a layoff. The State argued that the determination of DOP was not reviewable by PERC because PERC's authority did not extend to the review of a determination of an independent regulatory body vested with the express jurisdiction to devise layoff rules. The State further noted that the union's emphasis of prior decisions of PERC concerning local public employers was misplaced because unlike local service, State service is subject to extensive regulations.
On June 16, 1995, PERC issued its final agency determination regarding the scope of negotiations. The commission found the negotiations preempted by a vote of 4 to 2. The commission recognized that it is well established through case law that an employer has a duty to negotiate before implementing a reduction in its employees' workday, workweek or workyear. Citing Local 195, I.F.P.T.E. v. State, 88 N.J. 393, 404-05, 443 A.2d 187 (1982), PERC stated that in ordinary circumstances it would have found the employer's decision to cut the workweek to be mandatorily negotiable. In ultimately holding to the contrary, it stated:
However, an additional criteria, and unique factor in this case is that it involves State service, where the Merit System Board (MSB) regulates compensation and workweeks, see N.J.A.C. 4A:3-4.1 et. seq., and where the MSB has recently adopted an amended regulation extending the employer's statutory and managerial power to lay off employees to include demotions in the form of reductions in hours. That extension subjects such reductions to the full panoply of Civil Service requirements, including Department of Personnel ("DOP") review and approval of any layoff plan including a reduction in hours. N.J.A.C. 4A:8-1.1 provides:
(a) An appointing authority may institute layoff actions for economy, efficiency or other related reasons.
1. Demotions for economy, efficiency or other related reasons shall be considered layoff actions and shall be subject to the requirements of this chapter.

*547 (b) The Commissioner ... shall determine seniority and designate lateral, demotional and special reemployment rights for all career service titles prior to the effective date of the layoff and have such information provided to affected parties.
In an explanation to these rules, the MSB stated that it considers a demotion in the form of a reduction in hours to be a layoff action. 27 N.J.R. 1968. In this case, the DOP has specifically approved this reduction in hours as part of the layoff plan submitted pursuant to N.J.A.C. 4A:8-1.4.
The Commission went on to reason:
The DEP's position is that as a layoff involving State service, the elimination of 40 hour workweek positions is simply preempted and non-negotiable. In light of all these MSB regulations and DOP's approval of DEP's layoff plan, we consider this reduction in force to be a layoff action within the meaning of N.J.S.A. 11A:8-1 and therefore outside the scope of collective negotiations.
We recognize that these MSB regulations permit an employer to take unilateral actions which significantly and negatively impact upon an employee organization's ability to effectively pursue, through the negotiations process, issues directly and intimately affecting the work and welfare of the employees it is legally obligated to represent. This, however, is an inevitable consequence of the MSB's adoption of its rules and regulations and CWA's opposition to DEP's decision must be pursued in the form of a challenge to the relevant regulations.
On June 21, 1995, CWA requested that PERC rule on its pending request for interim relief and sought a ruling on the pending unfair practice charge. PERC denied and dismissed interim relief, refused to issue an unfair practice complaint, and noted that the Commission does not stay scope of negotiations determinations because they contain no order. PERC deemed the matter "closed."
By June 23, 1995, layoff notices had been issued, and DEP had completed 1,892 final telephone interviews with affected employees, who exercised layoff and seniority rights in accordance with MSB regulations. On June 28, 1995, we granted leave to appeal from PERC's scope of negotiations decision, and ordered the matter to proceed on an accelerated basis. We denied CWA's request for a stay of the layoff/workweek reduction pending appeal. The Supreme Court also denied this request. The workweek reduction took effect on July 8, 1995.
PERC's decision recognizes that an inevitable consequence of the MSB's amendment of its regulations to equate a demotion with *548 a layoff is that the employer may take unilateral action directly affecting the employee's hours and wages without negotiation where matters of economy, efficiency or other related reasons are concerned. PERC concluded that CWA's opposition to DEP's decision must be pursued in the form of a challenge to the relevant regulations.
Our review of a PERC decision is limited.
The role of judicial review [concerning the reasonableness of a quasi-Legislative policy decision pursuant to duly delegated authority] is thoroughly settled. The administrative determination will stand unless it is clearly demonstrated to be arbitrary or capricious.... This is the same rule as applies to judicial review of bargaining unit determinations by the National Labor Relations Board.... Moreover, where, as here, a substantial element of agency expertise is implicated, due weight should be accorded thereto on judicial review.
[State v. Professional Ass'n of N.J. Dep't of Education, 64 N.J. 231, 258-59, 315 A.2d 1 (1974) (citations omitted); see also Matter of Hunterdon County Bd. of Chosen Freeholders and Communications Workers of America, 116 N.J. 322, 329, 561 A.2d 597 (1989).]
Section 5.3 of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., requires employers to negotiate with majority representatives over "terms and conditions of employment" and over "modifications in existing rules governing working conditions ... before they are established." The central issue in a scope of negotiations determination is whether or not a particular subject matter is negotiable. This is a matter which depends on careful consideration of the legitimate interests of the public employer and the public employees. Local 195, supra, 88 N.J. 393, 401, 443 A.2d 187. The scope of negotiations in public employment is more narrow than private employment due to the government's special responsibilities to the public not shared by private employers. Government employers are public officials and as such are charged with governmental responsibility that cannot lawfully be abdicated or bargained away. Ibid.; and see Rutgers v. Council of AAUP Chapters, 256 N.J. Super. 104, 115, 606 A.2d 822 (App.Div. 1992), aff'd, 131 N.J. 118, 618 A.2d 853 (1993).
*549 In public employment there are no permissive subjects of negotiations; an employment issue is either mandatorily negotiable or non-negotiable. See Local 195, supra, 88 N.J. 393, 401, n. 7, 443 A.2d 187; Bd. of Educ. of Woodstown-Pilesgrove Reg. School Dist. v. Woodstown-Pilesgrove Reg. Educ. Ass'n, 81 N.J. 582, 588, n. 1, 410 A.2d 1131 (1980). In general, we have held that employment decisions such as compensation, hours, workloads, sick leaves, physical accommodation and grievance procedures are, unless preempted by statute or regulation, mandatorily negotiable, Rutgers, supra, 256 N.J. Super. at 115-16, 606 A.2d 822, whereas, decisions to hire, retain, promote, transfer, assign and dismiss are not negotiable. Ibid.
In determining whether a subject involves a negotiable term and condition of employment under section 5.3, our Supreme Court has articulated the following test for determining negotiability:
[A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
[Local 195, supra, 88 N.J. at 404-05, 443 A.2d 187.]
Here, PERC noted that, based upon this first aspect of the tri-part test, an employer ordinarily has a duty to negotiate before implementing a reduction in its employees' workday, workweek or workyear. See, e.g., Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., 78 N.J. 1, 8, 393 A.2d 207 (1978) (reducing secretarial workday from seven hours to four hours); In re Piscataway Tp. Bd. of Ed., 164 N.J. Super. 98, 395 A.2d 880 (App.Div. 1978) (reducing principals' workyear from 12 months to 10 months); City of Newark, P.E.R.C. No. 94-118, 20 NJPER 276 (P 25140 1994), appeal withdrawn (reducing workweek of recreation leaders from 40 hours to 20 hours). However, PERC held *550 that this case warrants a narrow exception to the normal preemption analysis, because of the nature and amount of pertinent regulations regarding State employees.
An employment issue is not negotiable if it has been preempted by statute or regulation. Local 195, supra, 88 N.J. at 403, 443 A.2d 187.
If the Legislature establishes a specific term or condition of employment that leaves no room for discretionary action, then the negotiation on that term is fully preempted. If the statute sets a minimum or maximum term or condition, then negotiations may be confined within the parameters established by these limits. State v. State Supervisory Employees Ass'n, 78 N.J. [54, 80-82, 393 A.2d 233 (1978)]; N.J.S.A. 34:13A-8.1. However, the mere existence of a statute or regulation relating to a given term or condition of employment does not automatically preclude negotiations. Negotiation is preempted only if the "statutory or regulatory provisions ... speak in the imperative and leave nothing to the discretion of the public employer." State v. State Supervisory Employees Ass'n, [supra,] 78 N.J. at 80 [393 A.2d 233].
[Ibid.]
N.J.S.A. 11A:8-1, states that:
A permanent employee may be laid off for economy, efficiency or other related reason. The employee shall be demoted in lieu of layoff whenever possible.
PERC's decision holding the reduction in workweek to be non-negotiable or preempted was based upon the language of N.J.S.A. 11A:8-1, and the implementing regulations, including those adopted in April 1995, N.J.A.C. 4A:8-1.1, et seq. PERC found that an additional, critical, and unique factor in this case is that it involves State service, where the MSB regulates compensation and workweeks. See N.J.A.C. 4A:3-4.1 et seq.
N.J.S.A. 11A:8-1 states that an employee may be laid off for economy, efficiency or other related reason, and that that employee shall be demoted in lieu of layoff whenever possible. Further, N.J.A.C. 4A:8-1.1 provides that:
(a) An appointing authority may institute layoff actions for economy, efficiency or other related reasons.
1. Demotions for economy, efficiency or other related reasons shall be considered layoff actions and shall be subject to the requirements of this chapter.

*551 (b) The Commissioner ... shall determine seniority and designate lateral, demotional and special reemployment rights for all career service titles prior to the effective date of the layoff and have such information provided to affected parties.
[Emphasis added.]
The applicable regulations are very explicit, and mandate that the Commissioner of DOP shall establish, maintain and approve changes in a compensation plan for State employees. N.J.A.C. 4A:3-4.1(d).
The statute makes it clear that the employer may take layoff action and demotions in connection with a budgeting decision such as the present where the interests of economy and efficiency require it. N.J.S.A. 11A:8-1. The regulations mandate that the Commissioner shall, where demotional layoff is used, determine demotional and special reemployment rights for all career service titles prior to the effective date of the layoff. N.J.A.C. 4A:8-1.1(b). Thus, a comprehensive demotional layoff scheme was created by statute and regulations. We are convinced that the managerial decision as to whether to lay off or demote requires that it be carried out without the burden of mandatory negotiation.
In Local 195, supra, our Supreme Court, in considering whether or not a proposed contractual provision requiring the State to meet with the union whenever an incidence of subcontracting would result in a layoff or job displacement of State service workers, looked at a civil service regulation which stated that the "appointing authority may lay off an employee ... for purposes of efficiency or economy or other valid reason requiring a reduction in the number of employees in a given class." 88 N.J. at 406, 443 A.2d 187. The Court, however, was unswayed as to the preemptive effect of that regulation on the issue of subcontracting as a negotiable issue. Ibid. "This provision grants considerable discretion to the appointing authority. It neither speaks in the imperative nor sets specific maximum or minimum terms or conditions.... Thus, the regulation does not preempt subcontracting as a negotiable subject." Ibid. Here, however, there is a *552 more direct and much broader statutory and regulatory scheme involved.
CWA further urges that the State cannot couch a decision to reduce the work hours of its employees without negotiation in terms of a "layoff" and "rehire." It cites our opinion in Piscataway Board of Ed., supra, wherein we stated:
The Board here argues that economy motivated the action complained of and that there is no material difference between the Board's right to cut staff and the right to cut months of service of staff personnel where the economy motive is common to both exercises. We disagree. While cutting staff pursuant to N.J.S.A. 18A:28-9 would be permissible unilaterally without prior negotiations, [citations omitted] there cannot be the slightest doubt that cutting the work year, with a consequence of reducing annual compensation of retained personnel ... and without prior negotiation with employees affected, is in violation of both the text and the spirit of the Employer-Employee Relations Act.
[164 N.J. Super. at 101, 395 A.2d 880.]
Piscataway, supra, is distinguishable because this case involves the State and thereby implicates a specific statutory and regulatory scheme under which the State's conduct constitutes a layoff.
We recognize that the statute and regulation do not mandate that DEP conduct layoffs, and that absent any imperative that the employer act a given way, prior case law supports CWA's assertion that the regulations do not preempt negotiations on the subject of a workweek reduction. Nonetheless, we are satisfied that the regulations mandating, as they do, that the DOP Commissioner act to determine and designate lateral, demotional and special reemployment rights for all affected titles prior to the layoff, demonstrates that a comprehensive and legitimate plan to equate the present action of the State with a layoff is legitimate and within the statutory authority. See N.J.A.C. 4A:8-1.1 et seq. Thus, PERC's decision was neither arbitrary nor capricious.
We reject CWA's argument that the reduction in salary range, which has occurred in the DEP layoff/reemployment, is neither a layoff or demotion within the meaning of the new regulations regarding demotions as layoffs. The argument is hypertechnical and fails to consider the overall purpose of the plan.
*553 We also reject the State's argument that the CWA had not exhausted all of its administrative remedies because it has not appealed the DOP approval or filed appeals with the MSB as provided in the regulations. We perceive that although the MSB has not directly considered the issue of whether the elimination of the 40 hour work week is in fact a demotion under its own regulations, the actions of the DOP and MSB carry with them their acceptance of the underlying premise that the State's action is to be equated with a demotional layoff directly related to budget policy.
In summary, the record clearly establishes the State's objective to tighten its belt. See "Governor's Budget in Brief." Under the statute, and well settled case law, see, e.g., Paterson Police PBA Local No. 1 v. City of Paterson, 87 N.J. 78, 432 A.2d 847 (1981), the State could unilaterally eliminate positions without any negotiation. N.J.S.A. 11A:8-1. Hiring decisions and layoff decisions are not negotiable. Our courts have recognized that there will be times when the government's role in implementing public policy will face off against the employees' right to negotiate over terms and conditions of employment. See, e.g., Rutgers, supra, 256 N.J. Super. at 116, 606 A.2d 822; accord, Woodstown-Pilesgrove Reg. School Dist. v. Woodstown-Pilesgrove Reg. Educ. Ass'n, 81 N.J. 582, 588 n. 1, 410 A.2d 1131 (1980). This is a consequence of working for an employer who also has a responsibility, unlike in the private sector, to the public, and cannot "bargain away" the public's interests. Local 195, supra.
We affirm the decisions under review regarding the scope of negotiations, the denial of issuing an unfair practice charge and the denial of the interim relief.