739 A.2d 450

MATTHIAS L. DIMATTIA, APPELLANT, v. NEW JERSEY MERIT
SYSTEM BOARD AND NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1999—Decided November 4, 1999.

Before Judges KING, KLEINER and PAUL G. LEVY.

*Michael J. Herbert,* argued the cause for appellant (*Herbert, Van Ness, Cayci & Goodell,* attorneys; *Mr. Herbert,* of counsel and on the brief).

*George N. Cohen,* Deputy Attorney General, argued the cause for respondents (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mary L. Cupo-Cruz,* Senior Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

Effective July 8, 1995, appellant, Matthias L. DiMattia, was one of 1665 employees effected by a layoff action conducted for Fiscal Year 1996 in the Department of Environmental Protection (DEP). Appellant's career service title as Administrative Analyst I remained the same but his 40–hour workweek position was eliminated and he exercised layoff rights to move to a 35–hour workweek position. His salary was adjusted to comport with the reduced

work hours per week. Appellant filed a good-faith layoff appeal, contending that a 1987 settlement agreement insulated him from the layoff effect.

In 1985, the Department of Personnel (DOP) advertised a promotional examination for Chief, Bureau of Collections, Licensing and Management Services. That examination was open to permanent employees in the Bureau of Collections, Licensing, Management Services and the Bureau of General Services and Procurement Promotional Unit, who had completed their working test period in the titles of Administrative Analyst I or Supervising Accountant and who had served continuously in a permanent capacity for at least one year. The promotional position of the Chief of the Bureau of Collection and Licensing carried a salary range 31, which was an increase of two ranges above appellant's then current salary range 29. Appellant was eligible for this promotion. However, shortly after the filing date, Ronald Tuminski, who then served as the Department of Environmental Protection (DEP) Director of Personnel, reassigned appellant to the Office of the Director, "promotional unit scope." As a result, the DOP Director of Examinations determined that appellant was ineligible to participate in the exam.

Appellant unsuccessfully petitioned the Director of Examinations for review of this matter. He then petitioned the Merit System Board (MSB) for further review, contending that his reassignment was effected in bad faith to prohibit him from test eligibility and to secure permanency for another employee, in violation of civil service law. During the pendency of the appeal, the parties agreed to settle the dispute and entered into an agreement dated February 1987. The agreement provided that appellant's application for the promotional position would be accepted and graded, and that he would be appropriately ranked for record purposes on the promotions list. In addition, the agreement stated that if appellant were reassigned to a position within the "promotional unit scope" while the list was in effect, he would be eligible for appointment from the list at the rank on the list to

which he was assigned. The appellant finished first on that Civil Service Promotional List.

On February 11, 1987, Tuminski forwarded that agreement to appellant's former attorney. In a letter enclosed with the agreement, Tuminski wrote:

> This will confirm your conversation with Mr. William Russell of my staff regarding the settlement agreement in the matter of your client Mr. Matthias L. DiMattia. It is understood that you and your client will sign this agreement and forward the original to Mr. Peter Boone in the Department of Personnel and a signed copy will be returned to me.
>
> Also enclosed is an internal personnel action request which *reassigns Mr. DiMattia to the Division of Parks and Forestry effective December 8, 1986. Please note that in this reassignment the title has been converted to a 40 hour workweek. This change of workweek will result in a one range increase to salary range 30.* A copy of the CS21 form will be sent to you upon processing to the Department of Personnel.
>
> [emphasis added].

On March 2, 1987, the MSB acknowledged the settlement and indicated:

> The stipulation of the settlement provides, among other matters, for appellant's ranking for record purposes, on the Chief, Bureau of Collections, Licensing, and Management Services hiring roster and certification of his name for appointment opportunities upon notice to the Department of Personnel that appellant has been restored to this promotional unit scope.

The promotional list expired on or about July 10, 1989. Moreover, the promotional title of Chief, Bureau of Collections, Licensing, and Management Services, has not been used in DEP since on or about September 9, 1989.

Since the date of the 1987 settlement, appellant has been reassigned several times while employed with the DEP. As a consequence of a reduction in force in 1992, appellant was reassigned from Parks and Forestry to the Environmental Safety, Health and Analytical Program. Then on November 27, 1993, he was reassigned to the Office of Audit. Thereafter, on February 5, 1994 he was reassigned to Financial Management and Budget, where he was employed in 1995 as DEP prepared for a department-wide Fiscal Year 96 (FY96) layoff action.

DEP was directed by the Department of Treasury to devise a no-growth budget for FY96 which would accommodate an anticipated $21 million revenue shortfall and an $11.5 million reduction in direct State funds. The Department of Personnel and the Office of Management and Budget within the Department of the Treasury approved a fiscal year 1996 layoff plan for DEP, prepared by Tuminski, which included the elimination of 160 positions and also a change in the workweek from 40 hours to 35 hours for about one-half of the work force. The workweek reduction is estimated to have saved DEP approximately $6.7 million dollars annually. The appellant's position was one of the 1,665 positions impacted by the workweek reduction. To deal with the workweek reduction, the 40–hour positions were eliminated and impacted employees were given "bumping rights" into similar, vacant 35–hour week positions established for each affected employee. Appellant bumped laterally into an Administrative Analyst I position, which was a 35–hour workweek position. In accordance with the State compensation plan, his salary was adjusted to range 29. The plan adjusted the salaries of the other 1,665 employees, whose 40–hour workweek positions were eliminated.

Appellant wrote to Tuminski, maintaining he had withdrawn his earlier appeal based upon the understanding he would be assigned to a range 30 title and part of that assignment was a 40–hour work week. The appellant requested he be excluded from the layoff plan or be appointed to a Range 30/NL title.

Tuminski rejected the appellant's plea and implemented the layoff. Appellant filed a formal appeal with the DOP, asserting that DEP acted in bad faith by abrogating the February 1987 agreement.

Administrative Law Judge Duncan recommended a summary decision in favor of DEP. The MSB concurred with the findings and recommendation made by Judge Duncan. In pertinent part, it said:

> The settlement did nothing more than preserve appellant's eligibility, *i.e.*, should he be reassigned back to a position within the unit scope while the list remained in

effect, he would be returned to the rank he earned on that list. Further, there is no evidence in the record that DEP did not comply with the settlement agreement. The Board affirms the ALJ's findings and conclusions and finds that there is no credible evidence of any bad faith on the part of the appointing authority.

Once the agency has issued its final decision "the Appellate Division's initial review of that decision is a limited one." *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999) (citations omitted). The scope of review of an administrative decision "is the same as that [for] an appeal in any non-jury case, i.e., 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record' considering 'the proofs as a whole.'" *Ibid.* (citations omitted); *See also G. Cannuscio v. Claridge Hotel and Casino,* 319 *N.J.Super.* 342, 347, 725 *A.*2d 135 (App.Div.1999)(finding the appellate court's function in reviewing the decision of an administrative agency is to determine whether there is adequate evidence to support the judgment rendered at trial).

The Administrative Law Judge and the MSB did not specifically address whether the side-letter was a part of the 1987 settlement agreement stating that, "[n]otwithstanding appellant's contention that the February 1987 letter is binding as part of the settlement agreement, the Board finds that neither the settlement agreement nor the February 1987 letter suggests that appellant could never be affected by a layoff action that might either affect his work-week or his salary range based upon economy and efficiency."

While we agree with appellant that the letter was a binding part of the 1987 settlement agreement, this point is ultimately irrelevant. It is clear to us that the reassignment of appellant to a 40–hour position was part of the agreement. Appellant was then in salary range 29 and wanted the opportunity for a promotion which carried a salary range 31.

We conclude that DEP also intended the 40–hour position as a material term of the agreement. First, respondent sent the agreement to appellant's attorney with the letter attached. In the letter, respondent specifically emphasized the term stating,

"[p]lease note that in this reassignment the title has been convert-
ed to a 40 hour work-week." DEP also included a copy of the
forms which officially transferred appellant to the 40–hour posi-
tion. If this term was not part of the agreement, appellant's
attorney had no use for such documentation. Therefore the
parties' intent to transfer appellant to a 40–hour workweek as part
of the February 1987 settlement is amply supported by the record.

However, we disagree with appellant's contention that the
agreement was in place indefinitely and the layoff was done in bad
faith and he should have been maintained at salary range 30.
Both of these contentions are without merit.

Although, the settlement does contain the term allowing appel-
lant a 40–hour work week, there is nothing which states the
agreement is to last forever or appellant could never be subjected
to a layoff. Such a reading of the agreement is unreasonable.

Further, there is no evidence in the record which supports such
an interpretation of the parties intent. Conversely, it is reason-
able to assume that the DEP, as a public employer, would have
the opposite intent, the intent not to be bound forever. DEP
would have to recognize its responsibility to the public interest
and that making such an agreement could run counter to that
duty. *See State v. Communications Workers of America,* 285
*N.J.Super.* 541, 553, 667 *A.*2d 1070 (App.Div.1995) (holding that
the public employer also has a responsibility, unlike in the private
sector, to the public, and cannot bargain away the public's inter-
est.)

As to the motivation for the layoff, *N.J.S.A.* 11A:8–1 provides:

A permanent employee may be laid off for economy, efficiency or other related
reason. The employee shall be demoted in lieu of layoff whenever possible. A
permanent employee shall receive 45 days' written notice, unless in State Govern-
ment a greater time period is ordered by the commissioner. . . .

The statute makes it clear that the employer may take layoff
action and demotions in connection with a budgeting decision
where the interest of economy and efficiency require it. *See Pros.
Det. Essex Cty. v. Hudson Bd. Freeholders,* 130 *N.J.Super.* 30, 43,

324 *A.*2d 897 (App.Div.1974) (holding a classified civil servant may be discharged or have his position abolished where the appointing authorities action is a good-faith effort to achieve a governmental economy or efficiency or the action is taken in the public interest).

Further, in 1995 the MSB amended *N.J.A.C.* 4A:8–1.1 to extend the employer's statutory and managerial power to lay off employees to include demotions in the form of reductions in hours. *Communications Workers of America, supra,* 285 *N.J.Super.* at 546, 667 *A.*2d 1070. Moreover, there is a presumption that an agency's actions are reasonable and the burden is placed on the challenging party to show otherwise. *Smith v. Ricci,* 89 *N.J.* 514, 525, 446 *A.*2d 501, app. dismissed, 459 *U.S.* 962, 103 *S.Ct.* 286, 74 *L.Ed.*2d 272 (1982).

Appellant contends his layoff was in bad faith because the terms of the 1987 agreement were violated and he was intentionally included in the workweek reduction. However, as we have already said, there is no evidence the agreement was to last indefinitely and forever protect appellant from being affected by a good-faith layoff. Appellant does not present any evidence that the layoff was a subterfuge to breach the 1987 agreement.

Instead, the record demonstrates the DEP was charged with the task of devising a no-growth budget for fiscal year 96. The budget had to accommodate a $21 million revenue shortfall and absorb a $11.5 million reduction in direct State funds. To comply with these restraints, DEP was forced to cut 106 positions and reduce the workweek of approximately 50% of its workforce. DEP maintains, and the record indicates, this alternative was chosen to avoid the loss of further personnel which may have jeopardized the efficient operation of the department.

Like other civil servant employees, appellant is subject to *N.J.S.A.* 11A:8–1, which allows a permanent employee to be laid off for economy, efficiency or other related reason. The Merit System Board did not err in holding respondent's action in laying off appellant was implemented to accomplish economy and efficiency. Appellant failed to meet its burden to show otherwise.

The decision of the Board is not arbitrary or capricious and is amply supported by the record.

Affirmed.