**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1658-16T1[1]
                A-1731-16T1

NEWARK TEACHERS UNION
LOCAL 481 AFT, AFL-CIO,

      Petitioner-Respondent,

v.

STATE-OPERATED SCHOOL
DISTRICT OF THE CITY OF
NEWARK, ESSEX COUNTY,

      Respondent-Respondent.

_____

IN THE MATTER OF ORLEANA
SIMPSON, NEWARK PUBLIC
SCHOOL DISTRICT,

      Appellant.

_____

NEWARK TEACHERS UNION
LOCAL 481 AFT, AFL-CIO,

      Petitioner-Appellant,

v.

_____

[1] These are back-to-back appeals consolidated for the purpose of this opinion.

STATE-OPERATED SCHOOL
DISTRICT OF THE CITY OF
NEWARK, ESSEX COUNTY,

    Respondent-Respondent.

_____

IN THE MATTER OF ORLEANA
SIMPSON, NEWARK PUBLIC
SCHOOL DISTRICT,

    Respondent.

_____

Argued telephonically November 29, 2018 –
Decided September 6, 2019

Before Judges Suter and Geiger.

On appeal from the New Jersey Commissioner of
Education, Docket No. 279-11/13.

Colin M. Lynch argued for appellant Orleana Simpson
in A-1658-16 (Zazzali, Fagella, Nowak, Kleinbaum &
Friedman, PC, attorneys; Colin M. Lynch, of counsel
and on the brief; Marissa A. McAleer, on the briefs).

Eugene G. Liss argued the cause for appellant Newark
Teachers Union Local 481 AFT, AFL-CIO in A-1731-
16.

Ramon E. Rivera argued the cause for respondent State-
Operated School District of the City of Newark, Essex
County (Scarinci & Hollenbeck, LLC, attorneys;
Ramon E. Rivera, of counsel and on the briefs; Carolyn
R. Chaudry and Shana T. Don, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Caroline Jones, Deputy Attorney General, on the statement in lieu of brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission in A-1658-16 (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

In these back-to-back appeals, which we consolidate in one opinion, Orleana Simpson and other former attendance officers (Simpson appellants) and the Newark Teachers Union Local 481 (NTU) appeal from a final decision of the Commissioner of the Department of Education (Commissioner).[2] In A-1658-16, the Simpson appellants are forty-six attendance officers previously employed by the State Operated School District of the City of Newark (District), who were laid off in July 2013 as part of the District-wide layoff plan. They contend their layoff violated the State's compulsory education laws, arguing that

---

[2] The Simpson appellants' initial notice of appeal also appealed from the Civil Service Commission's (CSC) final decision dated November 16, 2016. Their amended notice of appeal deleted reference to the CSC's final decision, listing only the Commissioner's final agency decision as the decision under appeal. We conclude from this that the Simpson appellants did not appeal the CSC's decision, although their brief makes repeated reference to that decision. We address the CSC decision in our opinion only as necessary to the issues on appeal.

A-1658-16T1

the position of attendance officer—that was abolished in the layoff—is required by law. They claim the layoff was conducted in bad faith because they were replaced by Student Support Teams (SSTs), comprised of District employees. The Simpson appellants seek reinstatement with full back pay and benefits.

In A-1731-16, NTU also appeals the Commissioner's final agency decision. It argues the layoff was illegal and contrary to the Legislature's intent. It contends the Commissioner should have ordered the District to cease and desist from using SSTs to enforce the compulsory education laws. We affirm the Commissioner's final decisions.

I

In 2013, the District faced a budget deficit of $56,900,000. Evidence showed that State aid to the District had not increased, it lost a one-time only source of revenue and it had increased costs. After the District met with the NTU in April 2013, the CSC approved the District's layoff plan to be effective in July 2013. The plan entailed laying off 202 employees, including all forty-six of the District's attendance officers. The position of attendance officer was abolished in the layoff.

Under Title 18A, schools are to appoint "qualified persons to be designated as attendance officers." N.J.S.A. 18A:38-32. After one year, an

attendance officer can attain tenure. N.J.S.A. 18A:38-33. Attendance officers enforce the compulsory education laws. N.J.S.A. 18:38-32. According to their job description, an attendance officer "visits schools and homes to promote school attendance, investigates absences, and determines causes of absences or delinquency . . . ." The attendance officer also performs "other related duties as required," such as "[e]nforc[ing] any remedial actions authorized to improve student attendance," and "conduct[ing] investigations." Prior to the layoff, attendance officers assigned to truancy operated four buses to pick up between 350 and 700 truant students per week and take them to school.

Under State Board of Education regulation N.J.A.C. 6A:16-7.6, "[e]ach district board of education shall develop, adopt, and implement policies and procedures regarding the attendance of students . . . ." The District developed a new attendance policy after the layoff. It included the requirement that each of the District's sixty-eight schools form an SST, to "monitor student attendance and combat truancy." The SST is comprised of a principal or vice principal, social worker, guidance counselor, parent coordinator, school resource officer, a nurse and two teachers. SST members do not receive additional compensation because they already are District employees. The Simpson appellants and NTU complain that because there was no attendance officer on the SST, no one was

tasked with the responsibility to canvas the streets for truant students. They contend the State's compulsory education laws were violated by laying off the attendance officers and transferring some, but not all their duties to the SSTs.

The Simpson appellants filed a good faith layoff appeal under N.J.A.C. 4A:8-2.6(a)(1). This was transmitted to the Office of Administrative Law (OAL) for a hearing. Several months later, the NTU filed a petition with the Commissioner that challenged the layoff as a violation of the compulsory education law. That petition was transmitted to the OAL for a hearing. The administrative law judge (ALJ) consolidated the cases and determined the Commissioner's interest was the predominant one because of the allegation the layoffs violated Title 18A. Thereafter, a consolidated hearing was conducted.

The ALJ's initial decision recommended reversing the District's layoff of the attendance officers. She found that although "some of the responsibilities that attendance [officers] had" were transferred to the SSTs, no one had the "sole responsibility . . . to look for truant students." Because of this, the ALJ concluded the District violated N.J.S.A. 18A:38-28, -29, and -32 "when it abolished the position of attendance [officer]." The ALJ determined that abolishment of the position constituted a bad faith layoff because of the statutory violations, even though the ALJ found with respect to other positons laid off,

that appellants had not proven "the layoffs were done for reasons other than economy and efficiency."

The Commissioner's May 12, 2016 final decision rejected the ALJ's initial decision, finding that the layoff of the attendance officers did not violate the statutes. The Commissioner observed that the purpose of an SST was to monitor student attendance and to monitor truancy, which is what the attendance officers had done. He determined that N.J.S.A. 18A:38-32 did "not require the employment of individual employees to serve in the role of attendance officer," and that "[d]esignating a team to perform the core duties outlined in the statute [was] acceptable, provided that the ultimate goal of encouraging student attendance is achieved—regardless of whether the team members have additional job duties and responsibilities." There was no requirement under N.J.S.A. 18A:38-32 for an attendance officer to be a full-time position. The SSTs performed many of the functions set forth in N.J.S.A. 18A:38-29, by warning parents, notifying them in writing about truancy and using "technology to assist with the performance of statutory mandated responsibilities . . . ." Even though N.J.S.A. 18A:38-28 required that an attendance officer "who shall find" a truant child return the child to the parent or teacher, the statute "[did] not compel [the District] to develop a scheme wherein attendance officers are

required to canvas the streets searching for truant students." Instead, the Commissioner noted "[a]dvancements in technology will naturally result in new and innovative ways to locate truant students." The Commissioner's decision concluded that the layoff was in compliance with the compulsory education laws.

The CSC issued its final decision on November 16, 2016. Because the Commissioner found that the layoff was not a violation of the statutes, the CSC determined that appellants did not prove the layoffs were made in bad faith. There was ample evidence that the layoffs were for reasons of economy and efficiency. Appellants did not show they were targeted for layoff for discriminatory or other insidious reasons.

On appeal, the Simpson appellants address both final agency decisions in their brief.[3] They contend the layoff of all the attendance officers violated the compulsory education laws because they require the appointment of attendance officers to enforce these laws. The Simpson appellants argue the Commissioner's decision is arbitrary and not supported by the record. They also

_____

[3] As noted, their amended notice of appeal identified only the Commissioner's decision as subject to appeal.

argue the layoffs were conducted in bad faith, and many of the attendance officers' functions were distributed to non-civil service employees.

The NTU argues on appeal that the Commissioner's decision was illegal and contrary to the evidence developed at the OAL. It asserts the decision was contrary to the legislative intent that the compulsory education laws are to be implemented by appointment of attendance officers.

## II

"Our review of administrative agency action is limited." Russo v. Bd of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27 (2007)). An agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Herrmann, 192 N.J. at 27-28 (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). "When an agency violates the express policy of its enabling act, the agency action may be deemed arbitrary and capricious." Caporusso v. N.J. Dept. of Health, 434 N.J. Super. 88, 103 (App. Div. 2014) (citing Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)). Our "[i]ntervention is warranted when the action is unsupported or unaccompanied by reasonable explanation." Ibid. (citing Pub. Serv. Elec. & Gas Co., 101 N.J. at 103). "Because '[t]he grant of

A-1658-16T1

authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals,'" we generally defer to the agency's statutory interpretation. In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs and Restructuring Filings, 167 N.J. 377, 384 (2001) (alteration in original) (quoting Gloucester Cty. Welfare Bd. v. State Civil Servs. Comm'n, 93 N.J. 384, 390 (1983)). However, we are not "bound by [an] agency's interpretation of a statute or its decision on a strictly legal issue." L.A. v. Bd. of Educ. of City of Trenton, 221 N.J. 192, 204 (2014) (alteration in original) (quoting Dep't of Children & Families, N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

N.J.S.A. 11A:8-1 "makes it clear that the employer may take layoff action and demotions in connection with a budgeting decision where the interest of economy and efficiency require it." Dimattia v. N.J. Merit System Bd., 325 N.J. Super. 368, 374 (App. Div. 1999) (citing Pros. Det. Essex Cty. v. Hudson Bd. Freeholders, 130 N.J. Super. 30, 43 (App. Div. 1974) (providing that a civil servant's position can be abolished in good-faith for government economy)). Where it is shown that a layoff action "is motivated by a bona fide desire to effect economies and increase municipal efficiency[,] . . . [t]he presumption of good faith attends the municipal action, and the burden is on petitioner to show

bad faith." Greco v. Smith, 40 N.J. Super. 182, 189 (App. Div. 1956). Bad faith must be "spelled out from words, conduct and all the surrounding circumstances and facts." Id. at 193.

Appellants did not show that the layoff of the attendance officers was for reasons other than efficiency and economy. It was undisputed that the District faced a $56,900,000 budget shortfall; it laid off 202 employees in 2013 to address that. Appellants' only proof supporting their contention that the attendance officers were laid off in bad faith is their argument that the compulsory education statutes were violated by abolishing the position of attendance officer. We reject those arguments.

The State's compulsory education laws require parents or guardians of a child between the age of six and sixteen to "cause such child regularly to attend" school. N.J.S.A. 18A:38-25; see State v. Vaughn, 44 N.J. 142, 145 (1965) (providing that parents bear the primary burden that a child receives an education). Under Title 18A, every school district "shall appoint a suitable number of qualified persons to be designated as attendance officers." N.J.S.A. 18A:38-32. The District is to "fix their compensation." Ibid. After one year, an attendance officer attains tenure. N.J.S.A. 18A:38-33. The appointment is

"for the purpose of enforcing the provisions [of the compulsory education laws]." N.J.S.A. 18A:38-32.

Where an attendance officer finds a school aged child who is "truant from school," the attendance officer "shall take the child and deliver him to the parent, guardian or other person having charge and control of the child, or to the teacher of the school which such child is lawfully required to attend." N.J.S.A. 18A:38-28.

The attendance officer is to "examine into all violations [of the compulsory education laws]" and then "warn [the] child . . . and the parent" about the consequences of being truant. N.J.S.A. 18A:38-29. The attendance officers shall give written notice to the parents that within five days the child is to attend school regularly. Ibid.

Under the statute, the attendance officer has "full police power to enforce [the compulsory education laws]" and may even "arrest without warrant any vagrant child . . . ." N.J.S.A. 18A:38-29. Repeated absences could result in a finding of juvenile delinquency. N.J.S.A. 18A:38-27. Sheriff officers, police and constables "shall assist attendance officers in the performance of their duties." N.J.S.A. 18A:38-30. Under N.J.S.A. 18A:36-25.2(a), where a child has

unexcused absences for five-consecutive school days, the attendance officer "shall investigate the absence and notify the . . . superintendent . . . ."

When interpreting a statute, the "paramount goal" is to effectuate the intent of the Legislature. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). "The statute's language is ordinarily the 'surest indicator' of that intent." Frugis, 177 N.J. at 280 (quoting Cornblatt, P.A. v. Barow, 153 N.J. 218, 231 (1998)). Courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492 (citations omitted). "If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007) (citing DiProspero, 183 N.J. at 492). "[A] court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015) (citing DiProspero, 183 N.J. at 492). "[C]ourts should 'seek to effectuate the "fundamental purpose for which the legislation was enacted."'" Klumb v. Bd. of Educ., 199 N.J. 14, 25 (2009) (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999)).

We agree with the Commissioner that the statutes in question do not require attendance officers to canvass the streets for students who are truant. The statute provides if an attendance officer "shall find" any school aged child who is truant from school that the attendance officer is to take the child to his parent or to the teacher. See N.J.S.A.18A:38-28. The plain language of the statute does not impose an affirmative obligation on attendance officers to go searching for students who might be truant. That they performed this function in the District, does not mean it was a "core duty" required by the legislation.

In a good faith lay off, "[t]he holders of positions may be laid off in the interest of economy and their duties assigned to others. It is a question of the bona fides of the action." Gianettino v. Civil Serv. Comm'n, 120 N.J.L. 531, 533 (Sup. Ct. 1938). We agree with the Commissioner that the tasks of the attendance officer did not have to be performed by individual officers but could be delegated to the SSTs. N.J.S.A. 18A:38-32 allows school districts to "appoint a suitable number of qualified person to be designated as attendance officers." Under the statutory language, we agree with the Commissioner that the legislation permits school districts to identify employees to perform the statutory duties of an attendance officer without requiring the specific creation of an

attendance officer position.[4]  By forming SSTs comprised of District employees, and tasking the SSTs with monitoring student attendance and truancy, the District satisfied the statute by "appointing qualified persons" who then were to be "designated" with these functions.

There was substantial evidence that the other tasks of the attendance officers were being performed by the SSTs.[5]  Some of the tasks were being done by new technologies.  Under the District's new attendance policy each school was to have an SST.  SSTs are comprised of District employees whose compensation did not increase by their membership on the SST.  We see no reason under the statutes why the tasks could not be delegated to SSTs where warranted by reasons of economy and efficiency.

---

[4]  We are not tasked with evaluating the success or failure of the program on curbing truancy and do not address appellants' arguments in that regard.

[5]  "Power School Clerks" mailed out initial notices to parents.  Teachers took attendance and called parents.  Depending on the absences, parents were invited to meetings.  Pre-judicial court representatives met with parents and children.  Safety officers had police powers as did Rapid Response Officers and both addressed truancy issues, but neither canvassed the neighborhoods looking for children.  SST members could make home visits when absences were within the five to nine day timeframe.

A-1658-16T1

We are satisfied that the plain language of the statutes is not violated by the layoff of attendance officers and assignment of the tasks required by the statutes to the SSTs. The Commissioner's decision was not arbitrary or capricious. It is affirmed in both appeals.[6]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The Simpson appellants raised no issues in their brief regarding the CSC final decision except that it erred by relying on the Commissioner's decision. Having affirmed the Commissioner, we also would affirm the CSC final decision if it were properly before us.

A-1658-16T1